## ANDERSON et ux. v. KNOXVILLE POWER & LIGHT CO.

Eastern Section.   February 25, 1933.

Petition for Certiorari denied by Supreme Court, June 24, 1933.

260

Cates, Smith & Long, of Knoxville, for appellants.
Ely, Buhl & Ely, of Knoxville, for appellee.

THOMPSON, J. The complainants, Anderson and wife, own property abutting on the defendant's right of way, known as the "loop" near Knoxville. They also own the property inside the "loop" and the ultimate fee in the right of way. In May or June, 1930, the defendant, which had previously been operating ordinary street cars around said loop, changed to "trackless trolley," which necessitated the taking up of the original track and the laying of a concrete slab around said loop.

The defendant originally acquired the "loop" right of way under a deed of January 28, 1913, from J. R. Ford and wife, which contained the following:

"To have and to hold said right-of-way unto the said party of the second part (the defendant corporation) its successors and assigns so

long as the same is used for railway purposes, otherwise to revert to the grantor, his heirs or assigns.''

On July 30, 1930, the complainants filed the original bill in this cause, and the principal prayer thereof was as follows:

''Second: that upon the hearing the Court construe said deed of January 28, 1913, between J. R. Ford and Mary R. Ford and the complainants may have a decree setting forth their rights in said lands or such parts thereof as may adjoin complainant's lands and that the defendant may be held to have forfeited and or abandoned said right-of-way.

''Third: that the defendant may be enjoined (a) from placing any guy wires over their property; (b) from putting any structures or wires or any other substance including dirt on complainant's property; (c) from making a station or stopping ground on your complainant's property; (d) from running any of its vehicles over the property of the complainants either on said concrete slab or otherwise; (e) that it be required to remove said concrete slab as an unnecessary and burdensome encumbrance on complainant's property; (f) that it be required either to remove the causes of the overflow of the surface water from said strip of ground or that it( be required to lead the same away from there and beyond the property of the complainants by pipes or other methods and or that it be required to compensate your complainants for all of said damages including said extra volume of water; and that this injunction may be made perpetual.''

On the final hearing the chancellor held in effect that the grounds upon which the jurisdiction of the chancery court had been invoked had failed, and therefore that he did not have jurisdiction to award damages. He dismissed, without prejudice, complainants' bill at their cost and relegated them to their action at law. The complainants have appealed to this court, and have assigned errors.

The original name of the defendant was Knoxville Railway & Light Company. In September, 1922, this name was changed by amendment to the charter to the name of Knoxville Power & Light Company. It seems that recently the name was again changed by amendment to Tennessee Public Service Company, Inc. We will simply speak of the company as the defendant.

In 1913, the defendant desired to construct a street car line to Lyons View, which is some four or five miles from the downtown part of Knoxville. At the end of the line at Lyons View the defendant desired to construct a loop for the purpose of turning its cars. At that time J. R. Ford and wife owned the property upon which the defendant desired to construct the loop. In fact, Ford and wife seem to have owned a rather large area of land in the section, including the land now owned by complainants. On January 28, 1913, Ford

and wife, without financial consideration, conveyed a right of way around the loop twenty feet wide. This deed contained the above-quoted provision.

The defendant constructed the line, including the loop. The track on the loop was laid upon a ballast consisting of stone or rock crushed to the size of about two inches in diameter. The cross-ties were about eight or eight and one-half feet long, and the ballast extended out about sixteen inches beyond the ends of the ties on each side of the track. The steel rails were, of course, spiked to the ties. Only one line of poles on only one side of the track was necessary to carry the trolley wire. This track, to a large extent, absorbed the rainwater, and not a great deal of said water flowed onto the land of Mr. and Mrs. Ford. The defendant operated ordinary street cars on this line until about May or June, 1930.

In 1927 and 1928, the complainants acquired their property from Mrs. Ford, Mr. Ford having died previously. The property which they acquired fronts or abuts about 350 feet on the loop, and as hereinbefore indicated, they also acquired the property inside the loop and the fee in the right of way. Their property is used for residential purposes—their home being situated thereon—except that there is situated a store inside the loop.

In May or June, 1930, the defendant, having previously procured permission from the City of Knoxville, from Knox county, and from the Public Utilities Commission, changed its line to what is known as a "trackless trolley." These trackless trolley cars require two trolley wires instead of one. They seem to be in all other respects like an ordinary street car, except that they run upon rubber-tired wheels instead of upon steel wheels on steel rails. They are, of course, not confined to a track and can be turned onto any part or side of the street. In May or June, 1930, and in order to provide for the trackless trolley, the defendant took up the old track around the loop, and constructed in place thereof a concrete slab, varying from fourteen to eighteen feet in width around the loop. This required poles on both sides of the slab, but the total number of poles around the loop was only slightly increased. It seems that it was necessary to anchor some guy wires on complainants' land, although this is not very clear from the record. The concrete slab and the poles were constructed within the limits of the twenty-foot right of way.

It seems that when the track was originally constructed a drain was put on the loop near the storehouse therein. From this drain a pipe extended across the Ford land and onto what is now complainants' land and emptied into a low place on what is now complainants' land in front of complainants' house. The water from the loop drained through this pipe line, but there was not enough of it to do any particular damage. When the concrete loop was built, this

drain was left in its original position, and another drain was installed, which, however, also emptied into the original pipe line. However, it seems that the original pipe line now stops at the side of the private roadway leading to complainants' home, and to the home of Mrs. Ford. On account of the fact that since the construction of the concrete slab there is six or seven times as much water passing through the pipe line as was formerly the case, the complainants' yard and driveway are now flooded in ordinary rains, and ponds are caused to stand in complainants' yard. This additional water is undoubtedly caused from the fact that the concrete slab sheds all water, whereas, the old track and ballast absorbed the greater part of it. It is a disputed question of fact as to whether or not it is necessary that this water be piped onto complainants' land or whether the same can be practicably disposed of by piping it elsewhere, etc.

It is undisputed that defendant is such a corporation as was given the right of eminent domain by Acts 1889, chapter 149.

It is true that a trackless trolley does not run upon steel rails or in fact upon any kind of rails, but it serves all of the purposes of an ordinary street car which does run upon steel rails. It is more convenient to the public, in that it can pull up to the curbing so that passengers may board or alight without crossing a part of the street. It is also advantageous over the ordinary street car, in that it does not make nearly so much noise. The main object of any street railway line or street car line is, of course, to carry passengers, and this is the main object and purpose of the trackless trolley involved in this cause. This Lyons View line is operated in conjunction with and as an integral part of the defendant's street railway system. Taking all of these matters into consideration, we are of the opinion that by changing to the trackless trolley the defendant, in law, did not abandon its right of way or cease to use it for railway purposes, but to so hold does require a construction of the deed of January 28, 1913, and to stretch the meaning of the words ''railway purposes'' to their fullest extent. The construction, however, is against the contention of the complainants.

It seems to us that if the necessary and practically unavoidable result of the proper construction of the concrete slab was to cause more water to flow onto complainants' land, the complainants would not be entitled to recover compensation or damages therefor, nor to an injunction restraining the same. This, because the defendant, having received a deed to the right of way, is entitled to use said right of way to its full extent, and without paying additional compensation, etc., for the most extensive use of which it is capable for railway purposes. But on the other hand, if the additional water could have been, or can now be, lawfully disposed of, without unreasonable cost.

in some other manner than throwing it onto complainants' land, the chancery court could, in its sound discretion, enjoin the defendant from throwing the additional water onto complainants' land, and could also award damages theretofore done, etc.

For the reasons heretofore mentioned, we do not think that the complainants would be entitled to compensation for the additional poles, wires, and other apparatus put upon the right of way, but would be entitled to recover compensation for any additional poles, anchor posts, guy wires, apparatus, etc., put upon their land outside of the right of way.

We do not think the chancellor erred in overruling defendant's demurrer to the original bill.

The decree of the chancellor dismissing complainants' suit will be reversed, and the cause will be remanded for the purpose of further proceedings in accordance with this opinion. The costs of the appeal to this court will be adjudged against the defendant.