No. 32,485

The Kansas Electric Power Company, *Appellee*, v. Arthur T. Walker and Elizabeth S. Walker, *Appellants*.

(51 P. 2d 1002)

Opinion filed December 7, 1935.

*George K. Melvin* and *R. E. Melvin*, both of Lawrence, for the appellants.
*Raymond F. Rice*, of Lawrence, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This was an action where the plaintiff, operating a passenger bus line in the city of Lawrence, asked for an injunction against the owners of a block of lots across which the plaintiff was running its buses, when the owners fenced up the passageway and refenced the openings thereto as the plaintiff tore them down.

The main defense was abandonment by discontinuing to operate the electric streetcar line and substituting therefor the motorbus line.

The trial court made findings of fact and conclusions of law, holding that the change from a streetcar line to a motorbus method of transportation did not constitute an abandonment of the passageway, and rendered judgment against the defendants, enjoining and restraining them from interfering with the use of such passageway

by the plaintiff for its motorbus line. From this judgment the defendants appeal, and the plaintiff has here a cross-appeal alleging error in the failure of the trial court to quiet its title to such passageway.

The main question involved is whether the change of method of transportation ·by the substitution of gasoline-driven rubber-tired buses for electric streetcar service with steel track is an abandonment of the right of way or privilege of the plaintiff company to cross over the property of the defendants. Much is said about the franchise granted by the city to use the streets of the city for one purpose and later agreeing to a change, but it must be conceded that the granting of the privilege of making such ·change and the right to use the streets of the city in the new and different way will not in any way affect the rights of these parties as to the passageway over private property within the city limits.

The trial court, in its findings of fact, found that after the company of which the plaintiff is the successor had been granted a franchise to operate an electric streetcar system in the city of Lawrence, it negotiated with the defendants and obtained a warranty deed to a strip of land twenty feet wide running east and west across the property owned by the defendants, lying between Louisiana and Indiana streets, which was a distance of 279 feet. The deed contained no reversion clause nor any reference to the use to be made of the land. Street railway tracks were laid on this strip and streetcars operated over it for two years. Then in 1912, for the purpose of eliminating two curves in the track, the company reconveyed the west portion of this twenty-foot strip and acquired from the defendants a twenty-foot strip extending from about the middle of the original strip in a northwesterly direction to Indiana street. The consideration named in the original deed was $1,000. In the second deed it was $600 and exchange of property. The last was a warranty deed in the usual form and contained no reversion clause, but it contained the following language:

". . . as part of the consideration for this deed, said parties of the first part (the defendants herein) for themselves, their grantees, heirs and legal representatives, undertake, promise and agree to build and maintain a good and sufficient fence both sides of the right of way hereby conveyed to the party of the second part."

The deed from the company to the defendants reconveying the west end of the original strip contained the following sentence:

"The party of the first part agrees, in consideration of the premises, and of the exchange of real estate between the parties hereto, that in the reconstruction of its line of street railway, the grade and alignment of its tracks shall be in accordance with the profile shown by tracing and blue print prepared by C. A. Haskins."

The court further found that after the exchange of these deeds the streetcar company abandoned the west end of the original strip by removing the ties and rails and constructed its line on the diagonal strip instead, and has continued to so use such strip connecting with the east end of the original strip and track until October 28, 1933, when the ties and track were removed and the strip was put in condition for the operation of gasoline-driven vehicles, which have been operated in the same direction and on substantially the same schedule as the streetcars had previously been operated, and this use of the strip has continued regularly since October 28, 1933. And the court further found that prior to the removal of the streetcar tracks there was some unauthorized use of this strip of land by pedestrians and automobiles; that since the removal of the rails and ties and the strip being put in condition for operation of motor vehicles throughout, there has been considerable use thereof by pedestrians and automobiles and it is treated and used by many persons in the same manner as a street or road is used by the public. Such use has not been authorized or encouraged by the plaintiff, which posted signs advising the public that it was private property and warned the public against its use. That during the operation of the street railway there was some noise and vibration occasioned by the company's cars; that the noise and vibration made by the buses now used by the company are greater than formerly existed when the streetcars were used, but such present operation does not impose any other additional burden or servitude upon the real estate here in controversy nor upon adjacent real estate owned by the defendants. The court then concludes as follows:

"The change in a method of transportation of passengers by the plaintiff does not constitute an abandonment of the plaintiff's right of way under the facts set forth in the foregoing conclusions of fact, and the plaintiff is entitled to a judgment as prayed for."

Appellants cite the case of *Abercrombie v. Simmons*, 71 Kan. 538, 81 Pac. 208, in support of their theory of abandonment, but that was a case where the land had never been used for any transportation purpose. It was there held, by virtue of a warranty deed without a reversion clause, and the description of the land being as a

strip lying within fifty feet of the center line of the main track of the railroad, which road was never built nor graded, that—

"An instrument which is in form a general warranty deed, conveying a strip of land to a railroad company for a right of way, will not vest an absolute title in the railroad company, but the interest conveyed is limited by the use for which the land is acquired, and when that use is abandoned the property will revert to the adjoining owner." (Syl. ¶ 3.)

The case of *Barker v. Lashbrook*, 128 Kan. 595, 279 Pac. 12, and several other Kansas cases are cited along the same line, which leave no doubt as to the disposal of the land used as a right of way under most circumstances when its use is abandoned. But our most serious question here is whether or not the change of the method of transportation and motive power is an abandonment.

The last two deeds and the court in its findings refer to this strip of land, which was used for a streetcar track across the defendants' land for more than twenty years, as a right of way. The abandonment claimed is not by disuse, as in many of the cases cited, because the plaintiff is still using this strip or right of way and for the same purpose of transportation of passengers, but the use of it is claimed to be such a radical departure from the original intention and purpose for which the right of way was obtained as to amount to an abandonment. Appellants refer to the necessity of going before the city authorities to get permission to make such change as was done in this case, as to the use of the streets, before attempting to make such a change, and urge that plaintiff had no greater right or authority to do as it pleased over private property than upon the city streets.

It has been held that a new franchise is not necessary when a change of motive power or method of operation is made. The citizens are the owners of the city streets, and having once voted such a franchise, the privilege and right continues without another or new franchise when such a change is made. The approval by the city authorities of such change is not at all in the nature of a franchise. In 60 C. J. 308 it is said:

"Where consent to a change of the motive power has been given by the local authorities where the consent of the property owners was not required, the change cannot be prevented by abutting property owners."

Of course, as said before, this does not bind the owner of private land over which the streetcar line passes, but the similarity is close between the rights of an abutting landowner and a grantor.

In the case of *Anderson v. Power & Light Power Co.*, 16 Tenn. App. 259, 64 S. W. 2d 204, the plaintiff was an abutting owner whose grantor had conveyed a twenty-foot right of way to the street-car company "so long as the same is used for railroad purposes, otherwise to revert to the grantor, his heirs or assigns." He asked for an injunction against the company, which had changed from operating an ordinary streetcar line to a trackless trolley, the land being through a loop where the plaintiff owned land on both sides of the right of way, which loop was five miles from the downtown part of Knoxville, and plaintiff complained of the two trolley wires instead of one and possible guy wires and other changes, and it was held:

"Changing from regular streetcars to 'trackless trolleys' and construction of concrete slab on right of way held not abandonment of right of way or abandonment of use thereof for 'railway purposes,' within deed containing reversion clause." (Syl. ¶ 1.)

The case of *Light Co. v. Iseley*, 203 N. C. 811, 167 S. E. 56, was under the declaratory judgment provision involving the question of the necessity of a new franchise where the change was desired to be made from an electric streetcar method of transporting passengers to a motorbus plan; and it was there held:

"A power company operated electric streetcars upon certain of the streets of a city under a municipal franchise, its lines extending to certain streets beyond the city limits. The power company and the city, some years after the franchise was granted, entered into a contract whereby the power company was to substitute, on certain streets, gasoline autobuses upon certain conditions for the electrically driven cars, and the contract was approved by the corporation commission. It further appeared that the change in the method of transportation was for the public benefit: *Held,* the proposed change from electric cars to autobuses along the designated streets does not involve the granting of a new franchise, requiring a vote of the residents of the city under the provisions of·its charter, but relates only to the method of transportation under the old franchise . . ." (Syl. ¶ 2.)

Another case involving the question of the necessity of a new franchise was *Matter of International R. Co. v. Pub. Serv. Comm.*, 242 N. Y. App. 300, 275 N. Y. Supp. 5, where it was held:

"Leave to substitute buses for cars on a line already operated is not the granting of a new right or franchise to use the streets. It is rather a modification of the old franchise. . . . Its enjoyment should continue, though the obsolete methods of transportation named in the franchise be replaced by modern ones, unless some right of the public is interfered with, and unless the utility's affirmative servitude over the streets is increased. It would hardly

be said that the rights of the traveling public or the comfort of those dwelling adjacent to the street would be affected unfavorably by the substitution of pneumatic tired wheels for iron ones jolting over rail joints." (pp. 302, 303.)

Appellants complain of the added noise, vibration and pedestrian and automobile travel as an additional burden which the defendants as original owners never agreed to permit, and should not now, as abutting owners, be compelled to endure when such was not contemplated when the deeds were executed. Eliminating the matter of additional travel, for which neither party is wholly responsible, the additional noise and vibration found by the court is not such an element as should wholly hinder and prevent the taking of a forward or progressive step, so recognized by the general public, when not in itself injurious or destructive.

The failure of the court to find from the oral evidence what the specific purpose was in obtaining the first conveyance is not error, we think, as the trial court made no attempt to separate the rights of the parties over the east part of the strip from those over the diagonal part, for which there was sufficient in the deed for the court to find the grant to be of a right of way and to conclude accordingly.

We think there was sufficient evidence in the second deed and the deed of reconveyance to support the findings as to the strip of land used and still in use being a right of way, and that the findings of fact support the conclusion of law, and if the strip so conveyed and used is a right of way, the title of the plaintiff to it is not such as should at this time under these findings be quieted, as urged by the plaintiff in its cross-appeal, even recognizing the distinctions made in the text and cases cited between a right of way for a steam railroad and over privately owned property for a streetcar line.

The judgment is affirmed.