DIXON et al. v. CITY OF NASHVILLE.—203 S. W. (2d) 178.

Middle Section, En Banc.   March 30, 1946.

Petition for Certiorari denied by Supreme Court, October 5, 1947.

Walter S. Walker, of Nashville, for appellants.

W. C. Cherry, of Nashville, for appellee.

McAMIS, J. This case involves the right of a municipality in the construction and drainage of its streets to interfere with the natural drainage of surface water to the injury of lower lying lands.

The bill, filed by property owners on Albion Street in the City of Nashville, was dismissed because (1) the work was done in strict compliance with a plan of the city engineer, (2) the water flowing upon complainants' lands after the improvements were made by the city was found to be "no more, or only very slightly more than before the construction of Eden Street" and (3) the acts complained of in the bill did not amount to a nuisance.

The area in question, as we understand, is located in Northwest Nashville on the side of a hill sloping from the top of the hill south of Eden Street and of complainants' properties to a point north of their properties.

Eden Street is 150 feet south of, and is parallel to, an alley across the rear of their properties. Both Eden Street and Albion Street run east and west between 24th Avenue at their eastern end to 25th Avenue at the west. South of complainants' properties the general slope, as before indicated, is to the north and, in addition, the slope is such that before the construction of Eden Street water drained west from 24th Avenue and east from 25th Avenue, converging in a natural drainage area between the alley and Eden Street. The result was to make complainants' properties servient to all of the water falling on the area from the alley southward between 24th Avenue and 25th Avenue. Erosion had caused three gullies to form above Eden Street each running generally toward a point in the alley at the rear of complainants" properties. The area between the alley and Eden Street was an open and unimproved "common."

About two years before the bill was filed a number of houses were constructed fronting on the north side of Eden Street and about the same time, by resolution of the Board of Public Works, the Superintendent of Streets was directed to grade and hardsurface Eden Street in

compliance with a plan on file in the office of the City Engineer.

Eden Street was so graded and constructed that all of the surface water falling on higher ground to the south and formerly passing through the three gullies mentioned was brought to a single drain in Eden Street approximately midway between 24th Avenue and 25th Avenue where it all now enters a 12 inch metal culvert running from the mouth of the drain in Eden Street down the hill to a point in the alley immediately to the rear of complainant Dixon's property.

While complainants were not permitted to fully develop the proof as to the extent of the damage resulting from the installation of the drainage system, the proof is undisputed that complainants' properties, or at least two of them, have been materially damaged. The proof is all to the effect that before the improvement of Eden Street surface water was not a serious problem but that thereafter the basement of one of the properties was continually being flooded and the foundation under another was seriously undermined. While the learned Special Chancellor held that the amount of water flowing onto these properties was at most only slightly more than before the improvements were made, it seems clear that the water was more concentrated and flowed at a more rapid speed through the metal drain than before, resulting in the injuries shown by the proof. In any event there can be no question that damage resulted and the only question for determination is the liability of the city for the condition created.

Unless a different rule applies to a municipality for acts done in the improvement of its streets, a question hereinafter considered, it is clear that complainants are entitled to some form of relief under the facts outlined.

We think the facts of this case are in every material respect the same as in Tyrus v. Kansas City, Ft. S. & M. Railroad Co., 114 Tenn. 579, 86 S. W. 1074. There, as in this case, the plaintiff owned a lot naturally servient to surface water falling on higher ground. The defendant Railroad Company elevated its roadbed in such a way as to concentrate the water at the lowest point above plaintiff's lot where it constructed a culvert under a fill causing the water to run through the culvert into an alley, as in this case, and thence upon plaintiff's lot. Before the culvert was constructed, water from the surrounding lands passed over the lot but, as the opinion states, "more slowly, and not in such concentrated volume." The culvert was properly constructed as a work of mechanical art and, as stated, was placed at the lowest level of the land, for purposes of surface drainage.

The holding is thus summarized in the opinion (114 Tenn. at page 595, 86 S. W. at page 1078): "The facts stated in the beginning of this opinion show that the defendant gathered the surface water that came upon its property into a body in its culvert, and sent it, in greater volume and with greater force than it was accustomed to flow, upon the land of the plaintiff, and thereby injured it. The defendant had no right to do this, and for so doing became liable in damages for the infliction of the injury. See authorities cited in note 3, p. 595, 21 L. R. A."

In Burton v. Chattanooga, 7 Lea, 739, 741, 742, the general rule is stated as follows: "The general rule is stated to be, that the owner of the higher land for instance, has no right, even in the course of use and improvement of his land, to collect the surface water into a drain or ditch, increasing it in quantity or in a manner different from the natural flow upon the lower lands of another, to the injury of such lands."

In Garland v. Aurin, 103 Tenn. 555, 53 S. W. 940, 941, 48 L. R. A. 862, 76 Am. St. Rep. 699, although the case involved an obstruction by the owner of the servient estate, the Court quoted from Addison on Torts in part as follows: "So that if the proprietor of the higher lands alters the natural condition of his property, and collects the surface and rainwater together at the bottom of his estate and pours it in a concentrated form and in unnatural quantities upon the land below, he will be responsible for all damages thereof caused to the possessor of the lower lands."

In the more recent case of Slatten v. Mitchell, 22 Tenn. App. 547, 124 S. W. (2d) 310, it is held in a learned opinion by Presiding Judge Faw that the "common enemy" doctrine that each landowner may fight off surface water and dispose of it as best he can does not obtain in this State, citing numerous Tennessee cases, and that in disposing of surface water the rights of adjoining owners must be respected.

That case involved the right of the owner of the higher land to build a wall along the line between his property and a public highway to keep surface water off his land and force it to flow on down the highway ditch upon the lands below. It was found that the owner of still higher lands had constructed lateral ditches to drain surface water into the ditch along the highway thus preventing the natural diffusion and absorption of water into the soil above defendant's lands. It was held that defendant's lands were burdened only with surface water which reached it under natural conditions and that defendant had a right to build a wall along the highway with an opening of such size as would permit only the normal amount of surface water to enter upon his lands. The effect of this holding is that the construction of lateral

ditches which altered the course of natural drainage, preventing or slowing absorption of water into the soil and hastening and concentrating its flow, placed an undue burden on defendant's land which he was warranted in removing by the construction of the wall.

In this case the water which formerly flowed down the hillside in three separate streams and was to some extent slowed and absorbed above the alley and spread out and diffused in or above the alley before it reached complainants' properties was deflected by grading the street across the gullies and brought to a single point where it was concentrated into a metal drain terminating in the alley. We think the city had no right to interfere in this way with natural conditions to the serious injury of the property below. It is unnecessary to decide whether preventing natural absorption alone (which right seems to be denied in Slatten v. Mitchell, supra) would be a violation of complainants' rights. Injury was inevitable from the collection and concentration of the water, the force of gravity and the fact that the drain terminated in such close proximity to complainants' properties whether there was more or less water.

Learned counsel for the city rely upon an allegation in the bill that the construction of Eden Street was necessary and that the grading was properly done. We do not see that this admission has any bearing on complainants' right to object to the construction and location of the drain or to the deflection and concentration of the water into the drain. The bill does not admit that these things which we think were the producing cause of the injury were either necessary or proper and no reason is offered why the water could not have been allowed to run through three drains into the gullies which existed before the street was built as well as to force it by artificial

means to a single drain nor, if that was necessary, is it easy to see how the metal culvert terminating 150 feet away benefited the street. It would seem that the real beneficiaries of the culvert were the owners of the land lying between Eden Street and the alley.

It is suggested that the damage was caused by the prevention of absorption due to the paving of Eden Street. While the city has a right to improve its property in any natural and ordinary way so long as there is no substantial change in the flow of surface water and would not be liable for preventing absorption of water by paving its streets alone, we think the actual cause was the deflection and concentration of the water into the drain. The surface of Eden Street, we think, is too small in comparison to the total drainage area above the alley to be a material factor.

A wrongful interference with the natural drainage of surface water causing injury to an adjoining landowner constitutes an actionable nuisance. Talley v. Baker et al., 3 Tenn. App. 321; 46 C. J. 727. And a municipality is liable if it creates a nuisance even in pursuing a public work. Chattanooga v. Dowling, 101 Tenn. 342, 47 S. W. 700; Nashville v. Mason, 137 Tenn. 169, 192 S. W. 915. And see Burton v. Chattanooga, supra.

For an injury growing out of the obstruction of a natural drainage a mandatory injunction is proper because successive suits for damages would not furnish an adequate remedy. Wilson v. Louisville & N. R. Co., 12 Tenn. App. 327.

We think the fact that the drainage plan was adopted by the City Engineer cannot relieve the city of liability for creating and maintaining a nuisance.

"To determine whether a sewer is necessary, and its location and general plan, by a corporation, is the exer-

cise of a legislative function; and it is not responsible in a private action for its failure to exercise its discretion in establishing one. Chattanooga v. Reid, 103 Tenn., [616], 621, 53 S. W. 937, and authorities there cited; 10 Am. & Eng. Ency. Law (2d Ed.), 240, and cases cited. But it will be liable if, after they are established, the city authorizes or with knowledge permits them to be so negligently constructed or operated by its agents as to become a nuisance detrimental to health and property.'' Mayor, etc., Knoxville v. Klasing, 111 Tenn. 134, 138, 76 S. W. 814. And see 388 Am. Jur. 348.

█ The city insists complainants' rights of action, if any, is under Code, Section 3404, authorizing a landowner to recover for a change of grade or other acts done by a municipality in the improvement of streets and that, having failed to sue within one year as required by statute in such cases, the action is now barred. This question was among the grounds of a demurrer filed by the city which was overruled. The city has filed no assignment to this action of the Chancellor but, treating the question as properly raised, we think it is clear that the suit is not one under the statute. The construction of the drain in the manner shown was not necessary and it was negligently constructed and maintained. Where this is so the statute is not applicable. Lebanon v. Dillard, 155 Tenn. 448, 295 S. W. 60; and see Anderson v. Knoxville Power Light Co., 16 Tenn. App. 259, 64 S. W. (2d) 204.

The assignment will be sustained and the cause remanded for a reference as to the damages sustained. If necessary an injunction will issue after remand requiring the city to remove the 12 inch drain or such part of it as may be necessary. Costs will be adjudged to the city.

Anderson, P. J., and Ketchum, Baptist, Felts, Hickerson, Howell, Hale and Burnett, JJ., concur.