# CITY OF COLUMBIA v. CURTIS LENTZ et ux.—282 S. W. (2d) 787.

Middle Section. June 2, 1955.

Petition for Certiorari denied by Supreme Court, October 7, 1955.

352

J. Dawson Frierson, Jr., of Columbia, for City of Columbia.

J. Shelby Coffey, Jr., M. A. Peebles, and Jerry Colley, all of Columbia, for Curtis Lentz et ux.

FELTS, J. This action was brought by Lentz and wife against the City of Columbia for damages for an alleged nuisance. Plaintiffs live on a farm of 191 acres which is about half a mile from the city limits, and which is watered by Little Bigby Creek. The city has a sewer pipe line which crosses the farm and empties into this creek.

Plaintiffs charged in their declaration that defendant city overtaxed the capacity of its sewer and caused it to discharge large quantities of raw sewage from its manholes in their field and into the creek; that this sewage contained waste from sinks, baths and toilets consisting largely of excreta, urine, faeces, etc.; that this offal and filth on the land and in the creek gave off foul and noxious and noisome vapors and odors, polluted the water in the creek so that livestock would not drink it, and corrupted the air so as to render plaintiff's home almost uninhabitable, and impaired the usable value of their farm.

The declaration contained two counts. After describing the condition complained of, count one alleged that

such condition constituted a nuisance at common law, and count two alleged that it was also a nuisance under our statute, Code, Sec. 11169.

The city pleaded the general issue of not guilty and also the statute of limitations of three years; and the case was tried upon the idea that plaintiff's right, if any, should be limited to the period of three years next before the filing of the suit.

There was a verdict and judgment in favor of plaintiffs for $9,000. The city moved for a new trial, its motion was overruled, and it appealed in error and has assigned a number of errors.

By its first assignment the city asserts that "there is no material evidence to support the verdict"; by its second, it asserts that "the evidence preponderates against the verdict"; and both assignments are presented together in a general argument to the effect that the verdict is wrong because it is against the weight of the evidence.

This argument overlooks the effect of the verdict of a jury. The constitutional right of trial by jury forbids us to set aside a verdict as against the weight of the evidence. Therefore, we can not consider an assignment of error that "the evidence preponderates against the verdict." Illinois Cent. Railroad Co. v. Abernathey, 106 Tenn. 722, 728, 64 S. W. 3; Sullivan v. Crabtree, 36 Tenn. App. 469, 478, 258 S. W. (2d) 782, 786.

Where there is no error of law, we can not disturb a verdict if it is supported by any substantial evidence; and in determining whether it is or not, we must take as true all the evidence which tends to support the verdict, discard all countervailing evidence, and take the strongest legitimate view of all the evidence to uphold the verdict. D. M. Rose & Co. v. Snyder, 185 Tenn. 499,

508, 206 S. W. (2d) 897; Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 542, 227 S. W. (2d) 2.

 Upon such a view of the evidence, taking that for plaintiffs as true, and discarding all to the contrary, we think that it fully supports the allegations of the declaration, that the jury could reasonably find that the city was guilty of maintaining a nuisance as charged, and that there is material and substantial evidence to support the verdict.

Evidence for plaintiffs is that Little Bigby Creek flows for about a mile in a U-shaped curve along the southern, the western, and the northern sides of plaintiffs' farm, and then runs on for about another quarter of a mile, and empties into Duck River. Plaintiffs have a 30 acre bottom field which lies within this curve and which they use for farming and pasturing.

The city's sewer pipe line is laid on a bridge over this creek at the south side of the farm, and runs northwardly for about 3,000 feet through this bottom field, across this U-shaped curve, to an outlet at the north side of the farm, through which outlet the sewer empties its contents into the creek. For most of the way the sewer pipe is buried underground, and there are seven manholes which are located at intervals along the line and which are covered with removable, perforated tops.

This sewer was constructed by the city in December 1936 or January 1937. The sewer pipe is a ten-inch pipe and was designed to carry sewage from residences and business houses in the western section of the city. It appears the sewer carried the load of sewage and gave no trouble until after plaintiff, Curtis Lentz, purchased this farm in May 1949. He paid $21,000 for it and built a residence and other improvements on it costing over $10,000.

As the area served by the sewer enlarged and more residences and business houses were built, the city allowed them to connect with this sewer line, and this added load so increased the flow of sewage that in times of freshets or rises in the creek the sewage would back up in the pipe line, run through the top of the manholes, overflow parts of plaintiffs' field, and large quantities of offal and filth would be left there, in the creek, and along its banks.

The city undertook to relieve this pressure in the sewer line. It made an additional outlet for the sewer at the southern edge of plaintiffs' farm. It constructed a backflow line running from the manhole there back to the creek, emptying sewage into the creek at the southern side of the farm. The effect of this was to add about a mile to the part of the stream carrying the sewage, and to pollute the creek from that point all the way around to the northern side of the farm where the original sewer outlet is located.

Evidence for plaintiffs was that by the summer of 1950 the city had allowed so many more homes and business houses to be connected with the sewer that it was not sufficient to carry the sewage; and whenever the creek was swollen with rains the sewer outlet was blocked so that the sewage was forced out of the manholes, overflowing much of their field with garbage and all kinds of offal and filth including human excrement; and in the summer when the waters of the creek were low the sewage was not carried away, but remained scattered along the banks and collected in pools in the creek alongside the field.

It was shown by evidence for plaintiffs that this decaying garbage, filth, offal and excrement deposited in the field, along the creek bank, and in the creek, gave off foul and offensive smells and stenches, polluted the

water in the creek so that livestock would not drink it, and filled the air with foul, noxious and noisome vapors and odors which were borne by the wind to plaintiffs' home, rendering it well-nigh uninhabitable.

It is clear that the accumulation of this contaminated matter upon plaintiffs' farm and in the creek is an actionable nuisance at common law, and it is also a nuisance under our statute, Code, Sec. 11169. Love v. Nashville Agricultural and Normal Institute, 146 Tenn. 550, 570, 243 S. W. 304, 23 A. L. R. 887; City of Murfreesboro v. Haynes, 18 Tenn. App. 653, 656-657, 82 S. W. (2d) 236.

It is likewise clear that a municipality is liable if it creates a nuisance even in performing a public or governmental function. Dixon v. City of Nashville, 29 Tenn. App. 282, 289, 203 S. W. (2d) 178, and cases there cited; Johnson v. Tennessean Newspaper, Inc., 192 Tenn. 287, 292, 241 S. W. 399, 402.

Under these authorities, we think the evidence for plaintiffs was such as to permit a finding by the jury that defendant city was guilty of maintaining a nuisance as charged and was liable for the injuries thereby caused to plaintiffs in the use and enjoyment of their property.

Defendant city insists, however, that it is not liable in this case to plaintiffs because their predecessors in title, Frank Leonhardt and wife, executed a deed conveying to the city an easement or right-of-way for the sewer across this land, and also a deed conveying to it the right or privilege of emptying its sewage into this creek; and that these deeds, being of record, are binding upon plaintiffs and are a complete defense to this suit.

We think these deeds had no such effect. The first one, which was made by Leonhardt and wife in July 1936, merely conveyed to the city a four foot right-of-way across the bottom for the sewer line. The other deed

was made in December 1936, by Leonhardt and wife, who then owned this farm, and by Paul Leeper and wife, who owned the land on the other side of the creek. It purported to convey the same right-of-way with the added right to the city to empty the sewage from its north outlet into the creek and let it flow on down the creek to Duck River.

This deed, in its granting clause, after describing this right-of-way, already conveyed by the earlier deed, added that it was "understood that the city of Columbia shall have the privilege of emptying all of the sewarage from said sewerage line into said Bigby Creek at the point where the sewer line enters the creek hereinbefore mentioned as 'outlet' without liability for damages to any of the land or property bordering on said creek from the point known as the outlet to Duck River". And substantially the same language is repeated in the habendum clause.

Thus there is nothing in either of these deeds giving the city the right to empty the sewage at the south or second outlet, or at any other point in the stream above the original outlet at the north side of the farm. Nor is there anything in either of the deeds which authorized the city to overflow the sewage through the manholes and upon this bottom field.

While this latter deed did convey to the city the privilege of emptying the sewage at this outlet into the creek, it did not authorize the city to create or maintain a nuisance on this farm or in this creek. The right to empty the sewage was not a license to maintain a nuisance.

We think it was the intention of this deed that the city could, and would, empty the sewage at this outlet into the creek without polluting it or causing a nuisance. It appears that the city did this for many years—from 1937

to 1949; and that for the last several years before this suit was brought the State Health Department has been urging the city to provide a proper sewage disposal plant; and that if it had done this, and had properly treated the sewage, it could have continued emptying it into the creek without polluting this stream or causing any nuisance.

So we think that neither of these deeds gave the city any license to pollute this stream or maintain the nuisance sued for, and that neither of them constituted any defense to this suit.

Defendant city assigns for error that the verdict is excessive and that it is so excessive as to indicate passion, prejudice, or unaccountable caprice on the part of the jury; and in an effort to support these assignments defendant argues that the evidence preponderates against plaintiffs and in favor of defendant upon most of the issues as to the damages or the amount of the verdict.

■ The verdict was a general verdict, finding all the issues for plaintiffs, Code, Sec. 10343. We cannot weigh the evidence to determine its preponderance. We can only determine whether there is any substantial evidence to support the verdict. This is the rule not only as to liability but also to the injuries on which the amount of damages is based. Thoni v. Hayborn, 37 Tenn. App. 56, 61, 260 S. W. (2d) 376, 378.

■ ■ Where one's property is injured by a temporary, recurring nuisance he may recover damages from time to time for the impairment of the use and enjoyment of the property; and the measure of damages will ordinarily be the lessening of the rental or usable value of the property, caused by the nuisance. Love v. Nashville Agricultural and Normal Institute, 6 Tenn. App. 104, 110-111; City of Murfreesboro v. Haynes, 18 Tenn. App. 653, 657, 82 S. W. (2d) 236, and cases there cited.

As stated, the proof of plaintiffs' damages was limited to the three years next before the suit was brought. Evidence for plaintiffs was that during that period when the creek rose, the sewer outlet was blocked, the sewage ran out of the manholes, scattering the filth in plaintiffs' field; and in the dry season, when the creek was low, the sewage in the creek was not carried away, but was left on the banks and in the creek bed, collected in pools.

Evidence for plaintiffs was that this offal and filth, left on the land and in the creek, emitted foul and offensive smells and stenches, polluted the water so that it was unfit for livestock, and corrupted the air with noxious and noisome vapors and odors which largely impaired the usable value of plaintiffs' home and farm.

Evidence showed what would have been the reasonable rental values of the property but for the nuisance. There was a camp site of three or four acres near the bank of the creek which plaintiffs could have rented all the time at $10 per day or $3,650 per year. The rental value of the farm was shown to be $2,000 per year; and the rental value of the house was shown to be from $60 to $75 per month, or $750 to $900 per year.

Plaintiffs occupied and used the house and the farm and it was not for rent, except the camp site which plaintiff Lentz testified that he could, and would, have rented at $3,650 per year but for the nuisance. While there was no opinion evidence estimating the amount of depreciation in the rental values caused by the nuisance, the evidence showed that the effects of the nuisance largely reduced such value, and in addition, prevented plaintiffs from renting the camp site for $3,650 per year, or more than $9,000 for the three year period involved.

"As a general rule we do not think we ought to disturb the amount of a verdict returned by a jury

of fairminded men and approved by a fairminded judge unless it appear to a moral certainty to be so far beyond reason that to let it stand would be palpable injustice." Gibson County Electric Membership Corp. v. Hall, 32 Tenn. App. 394, 408, 222 S. W. (2d) 689, 696. Board of Mayor and Aldermen of Covington v. Moore, 33 Tenn. App. 561, 570, 232 S. W. (2d) 410.

So we do not think a verdict is so excessive as to indicate passion, prejudice or caprice on the part of the jury, or so excessive as to warrant us in disturbing a verdict by suggesting a remittitur.

Finally, defendant complains of misconduct of four of the jurors in driving out to plaintiffs' farm during the noon recess of the second day of the trial. On the motion for a new trial defendant offered affidavits of two of these jurors, Dugger and Frakes, that the four of them had driven in a car out to where they could see plaintiffs' field and his house, and that the four of them discussed the case on the way back to the Court House.

On the hearing of defendant's motion for a new trial, plaintiffs offered an affidavit of each of these four jurors —Dugger, Frakes, Norman, and Mrs. Cecil. It appears that these four finished lunch about 20 minutes before one o'clock, the time for the Court to reconvene, and rode in Dugger's car out the road to a point some 500 feet past plaintiffs' house, where they stopped, turned around, and drove back to the Court House.

Each of these four jurors stated that none of them got out of the car; that they did not see the sewer, the manholes, or the sewer outlet, none of those things being visible from the point where they stopped; that they did not discuss the Lentz case, or whether plaintiffs were entitled to damages; and that they did not tell any of the

other jurors that they had been out to plaintiffs' place. Mrs. Cecil also stated she did not learn anything she did not already know before the trip; and Norman and Dugger each said his decision was based solely on the evidence heard in Court and the law as charged by the Judge.

While a juror cannot impeach his verdict by saying what did or did not influence him, his testimony is, of course, received to show the fact that material evidence not heard upon the trial was communicated to him, but not to show its effect. Meegal v. Memphis St. Ry. Co., 33 Tenn. App. 247, 238 S. W. (2d) 519, 20 A. L. R. (2d) 286.

It was, of course, grave misconduct for these four jurors to drive out to the scene of the litigation; but since our harmless error statute, ch. 32, Acts 1911, Code, Sec. 10654, such misconduct is not reversible error unless it affirmatively appears that it affected the result of the trial. Meegal v. Memphis St. Ry. Co., supra; Johnson v. McCord, 36 Tenn. App. 14, 17, 251 S. W. (2d) 144, 146, and cases there cited.

We think it does not affirmatively appear that this misconduct of these four jurors affected the result of the trial. They merely drove out the road past plaintiffs' house, turned around and came back, without getting out of the car, or seeing the sewer or the land, or learning anything not already disclosed to them in the evidence given on the witness stand.

All of the assignments of error are overruled, the judgment of the Circuit Court is affirmed, and a judgment will be entered here for plaintiffs against defendant for the amount of the judgment below with interest and the costs of the appeal in error. Such costs are also adjudged against the surety on defendant's appeal bond.

Hickerson and Shriver, JJ., concur.