IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 3, 2000 Session

## RIVER CITY RESORT, INC., v. NORFOLK SOUTHERN RAILWAY COMPANY, f/d/b/a CHATTANOOGA TRACTION COMPANY, CINCINNATI NEW ORLEANS & TEXAS PACIFIC R.Y. COMPANY and JIT TERMINAL, INC.

**Direct Appeal from the Chancery Court for Hamilton County**
**No. 99-0292     Hon. W. Frank Brown, III, Chancellor**

**FILED JANUARY 3, 2001**

**No. E1999-02567-COA-R3-CV**

---

This Declaratory Judgment action was brought to determine the validity of an easement. The Chancellor declared the easement valid. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

William H. Horton, Chattanooga, Tennessee, for River City Resort, Inc., appellant.

Donald J. Aho, Chattanooga, Tennessee, for JIT Terminal, Inc., appellee.

William M. Foster, Chattanooga, Tennessee, for Norfolk Southern Railway Company and the Cincinnati, New Orleans and Texas Pacific Railway Company, appellees.

## OPINION

This is a dispute over the validity of an easement between River City Resort, Inc. ("River City"), and  Norfolk Southern Railway Company ("Railroad") which is across a certain property owned by River City.  River City brought this declaratory judgment against the Railroad and JIT Terminal, Inc. ("JIT"), an adjoining landowner who derives benefit from the easement.

River City acquired the property in controversy in 1992, and the Railroad is a successor in interest of Chattanooga Traction Company. In 1958, River City's grantor gave Chattanooga Traction an easement across the property for the purpose of constructing and operating a "portion of a proposed industrial lead track." The easement contains no limitation as to time, purpose, etc., except that it does state that if the Traction Company (Railroad) should abandon the lead track and remove it, the easement would then revert to the landowner.

Other easements were procured from adjoining landowners so the Railroad could construct a track to serve the area. The track was constructed in 1959, and has been in continuous use since. River City acquired the property with admitted knowledge that the easement existed and that they were acquiring the property subject to it.

After hearing evidence, the Chancellor entered judgment finding that the Railroad's use of the easement was valid and lawful, and that River City had no cause of action against either defendant.

Our standard of review is *de novo* with a presumption of correctness of the Trial Court's findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). In this case, certain testimony of officials of River City was disputed by testimony of Railroad officials, but we must defer to the Trial Court's decision regarding the credibility of the testimony. *National Service Fire Ins. Co. v. Williams*, 454 S.W.2d 362 (Tenn. Ct. App. 1969).

River City argues that the easement is not valid because it is no longer being used according to its original scope and purpose. In determining the validity of an easement, the Court must look to the purpose for which the easement was granted. *See Adams v. Winnett*, 156 S.W.2d 353 (Tenn. Ct. App. 1941).

The Trial Court held that the easement was being and had always been used for the service of several railroad customers, and that this purpose was consistent with the easement's purpose. The easement document states that the easement is for a "portion of a proposed industrial lead track", and that it will continue so long as the Railroad "may require the same for the construction, maintenance, operation, and repair of said industrial lead track". "Operation" of the track is a very broad term, which would include basically any type of utilization of the track by the Railroad. The evidence was clear that the Railroad continued to "operate" the track, using same for switching and storage of cars, and that it had "operated" the track continuously since the easement was granted. The evidence also established that the track had been used for many years not only for the benefit of the landowner, but also for the benefit of third parties.

The easement language is clear and unambiguous that the Railroad can use the

easement for as long as it wishes to "operate" the track. If the parties had intended to limit the easement's duration to only that period of time that River City's property was being served, they could have done so. Since there is no such limitation in the document, the Court cannot impose one. *See Turnley v. Garfinkel*, 362 S.W.2d 921 (Tenn. 1962).

During trial, River City focused on the "trackage agreement" executed by the parties shortly after the easement was granted, and argues that the termination of the trackage agreement, which could have been done by either party upon 60 days' notice, also terminated the easement. Review of the trackage agreement demonstrates that its purpose was to provide for reimbursement of the cost of building the tracks, and that it actually granted no property rights, and is not recorded. The termination of that agreement would have no effect on the separate, recorded easement document, as the Trial Court properly held. River City's issue of whether the Railroad's use exceeds the original scope and purpose of the easement, depends upon whether there has been a material increase in the burden on the servient estate, and this is a question of fact. *O'Leary v. Hall*, 1996 WL 84852 (Tenn. Ct. App. Feb. 27, 1996.) The Trial Court found that the use of the easement by the Railroad had been basically the same for many years, and the evidence does not preponderate against this finding. While the use of the track has increased in recent years due to increased business in the area, it was not shown that this was a major change in the intended use as found by the Trial Court.

River City further argues that the Railroad has alternative tracks to use, but once an easement has been granted, the holder has the right to reasonable use of the affected property, and its continuation does not depend on the necessity of its use. *Cole v. Dych*, 535 S.W.2d 315 (Tenn. 1976); *Cottrell v. Daniel*, 205 S.W.2d 973 (Tenn. Ct. App. 1947). As noted, the only terminating condition placed upon the easement is abandonment and removal of the track by the Railroad, and this has not occurred.

River City argues that the Railroad is estopped from enforcing the easement because it promised to release the same, and River City relied on that promise to its detriment. This argument is without merit, because River City did not demonstrate a promise upon which it justifiably relied to its detriment, as is required for a finding of promissory estoppel. *See Alden v. Presley*, 637 S.W.2d 862 (Tenn. 1982). The Railroad never represented to River City that it would definitely release the easement. In fact, the evidence is that the Railroad always maintained that the track was needed, and that a release would not be possible unless a viable alternative could be procured. Any promise by the Railroad to release the easement was always contingent upon certain conditions being satisfied, such as finding suitable replacement property upon which to build a new track, and payment of the cost associated with the same.

Finally, River City argues that the Railroad's operations on the track constitute an actionable nuisance. It relies on *City of Columbia v. Lentz*, 282 S.W.2d 787 (Tenn. Ct. App. 1955), for the proposition that use of a valid easement can create an actionable nuisance on the property. It cites no authority for the proposition that if a nuisance were created by the easement holder, that it would somehow invalidate the easement. Whether or not the use of the easement

is unreasonable is determined by considering such factors as "locality and the character of the surroundings, the nature, utility and social value of the use, the extent and nature of the harm involved, the nature, utility and social value of the use or enjoyment invaded, and the like." *Caldwell v. Knox Concrete Products, Inc.,* 391 S.W.2d 5 (Tenn. Ct. App. 1964). River City argues that the Railroad's use of the track is a nuisance because it stores cars there which block the view and there is noise and traffic interruption, and some of the cars carry toxic chemicals. The Trial Court in its opinion, observed that the Railroad can transport hazardous materials, and their transport and storage of the same does not automatically give another party a cause of action, so long as the proper care is exercised. *See Ergon v. Amoco Oil Company*, 966 F. Supp. 577 (W.D. Tenn. 1977).

The transporting, storage, and switching of railroad cars has been occurring on the track for more than forty years, and is consistent with the locality and character of the surroundings, and this use serves a valid purpose. The fact that the plaintiff wants to use its property for something out of character with the surroundings does not, in and of itself, render the Railroad's use a nuisance. Plaintiff failed to carry the burden of proof on this issue, and we find the nuisance argument to be without merit.

Accordingly, we affirm the judgment of the Trial Court and remand, with the cost of the appeal assessed to River City Resort, Inc.

_____
HERSCHEL PICKENS FRANKS, J.