JOE and CLARABELLE DONAHUE v. EAST TEN-
NESSEE NATURAL GAS COMPANY.

FRANK and THELMA MOSIER v. EAST TENNES-
SEE NATURAL GAS COMPANY.—284 S. W. (2d) 692.

Middle Section. July 29, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

A. A. Kelly, of South Pittsburg, and Paul Swafford, of Jasper, for plaintiff.

W. W. Haynes of Whitaker, Hall & Haynes, of Chattanooga, and A. F. Sloan, of South Pittsburg, for defendant.

SHRIVER, J.  The two above captioned cases were tried together and were appealed under a single transcript.

The parties will be referred to as plaintiffs and defendant as they appeared in the court below.

I

These cases were commenced by the issuance of a summons in the Circuit Court of Marion County on April 29, 1954.

The Donohue suit was for $2,500 while the Mosier suit was for $3,000.

In their declarations the plaintiffs in both cases alleged that they were the owners in fee of certain real estate described in the declaration. That about three years previously, the defendant had constructed a pipeline for the transmission of natural gas across a stream that flowed past the property of the Mosiers and across the stream on the property of the Donohues, and negligently left trees, bushes, stumps and other debris along the sides of, the stream. It was averred that defendant also changed the natural drainage of the mountainside adjoining said stream, and that, in wet weather, large quantities of water came down said stream, washing the debris down stream where it formed an obstruction, or dam, against which sand and gravel lodged, causing overflow on plaintiffs' property and doing irreparable damage to plaintiffs' land.

On motion of defendant to require the plaintiffs to make a more definite statement in their declarations, they amended so as to allege that the plaintiffs' damages and injuries were of a recurrent nature and that they had been occasioned, in particular during periods of heavy rainfall, mostly during the winter and spring but sometimes in the summer.

It was alleged that the defendant cleared the right-of-way in the summer and fall of 1950 leaving said trees, bushes and debris, including large rocks and dirt, piled along its right-of-way which was flooded in wet weather, and that, during the fall and winter of 1951-1952 and the spring of 1952, additional quantities were washed down stream; that during the winter and spring of 1952-1953 a large quantity of trash and other debris from the right-of-way became lodged in the bed of the stream 400 or 500 yards below the right-of-way, and about 200 feet below the road which passes in front of plaintiff Dona-

hue's home, and that these trees and debris formed an obstruction causing water from the stream to flow over and across plaintiffs' land at each heavy rainfall; that rocks, boulders, dirt and sand filled in the stream bed causing additional overflow which has continued ever since.

It was further alleged that in the winter of 1953-1954, part of the original debris was washed away but the bed of the stream continued to fill; that the most serious overflow and washing of plaintiffs' land occurred during the winter of 1952-1953 and, since that time, each time there has been a heavy rain additional overflow has occurred. It was further alleged that the damages have become and are now permanent damages since the obstruction and filling of the channel of said stream in the winter of 1952-1953.

On motion of plaintiffs, an order was made on defendant to plead specially. In the special pleas, which were later amended, defendant relied on the one year Statute of Limitations and also on the three year Statute of Limitations as contained in Code Sections 3132 and 8598, respectively.

The defendant further pleaded accord and satisfaction, asserting that the plaintiffs in each of these cases had settled their claims for damages and had signed a release for same upon payment of an agreed amount, also that plaintiffs had signed statements in each case to the effect that the right-of-way had been properly and satisfactorily cleaned up. It was asserted that the plaintiffs were, therefore, estopped to now deny that the right-of-way was not properly cleaned up.

Issue was joined and the case came on to be heard before the Circuit Judge and a jury at Jasper, Tennessee,

on October 24, 1954 and the jury returned a verdict in Donohue case for $600 and in the Mosier case for $800.

Motion for a new trial in each case was made and overruled, whereupon defendant perfected its appeal to this Court.

## II

### Assignments of Error

There are ten assignments of error.

Assignments I and II are to the effect that the trial judge erred in failing and refusing to sustain a motion for a directed verdict because the actions were barred by the one year statute and the three year statute of limitations as contained in Code Sections 3132 and 8598, respectively.

Assignment III was to the effect that the Trial Judge erred in failing to sustain a motion for a directed verdict because the proof showed that the plaintiffs had executed written releases of their claims.

Assignment IV was to the effect that the Trial Judge erred in failing to direct a verdict because it was shown that the plaintiffs represented that the right-of-way was cleaned up to their satisfaction and signed a release to that effect.

Assignment V complains that the Trial Judge admitted, over objection of the defendant, evidence of the cost of restoration and repair, whereas, the suit was for permanent damages.

Assignment VI complains of a portion of the judge's charge which is copied in said assignment having to do with instructions as to the cost of repair or restoration which the defendant claimed was not relevant.

Assignment VII complained that there was no material evidence from which the jury could determine that the

debris which caused the obstruction came from the right-of-way of defendant.

Assignment VIII complains of the admission of certain testimony of witnesses respecting the value of plaintiff's land which defendant claims was inadmissible because the witnesses were not qualified as experts.

Assignment IX complains that the Trial Judge erred in failing to grant a new trial on the ground of excessiveness of the verdicts.

Assignment X asserts that it was error for the Trial Judge to fail to grant a new trial since he stated that he would grant a new trial unless the complainants agreed that the present suits would constitute a settlement of all present and future damages.

The defendant states "this was error because, if the defendant was entitled to a new trial without such an agreement on the part of plaintiffs, then the making of such an agreement by the plaintiffs was not a proper reason for denying the motion for a new trial."

### III

1. As to assignment of error No. I, which is to the effect that the statute of limitations of one year as provided in Code Section 3132 is applicable so as to bar recovery in this suit: We are of opinion that, while there is a serious question as to the applicability of the one year statute, nevertheless, we do not believe that the facts and circumstances shown by this case bring it within the provisions of said statute.

The property alleged to have been damaged in the two cases involved, was not taken by the defendant and was not intentionally appropriated to its use. The overflow in question was an eventuality unanticipated by any of the parties. It was accidental in nature and, at most, re-

sulted from nonrecurring negligence on the part of defendant. The debris, if it came from defendant's right-of-way, which is doubtful, might have washed away without becoming lodged, or it might have lodged in such way, or at such place, as to have caused no damage.

In Morgan County v. Neff, 36 Tenn. App. 407, 256 S. W. (2d) 61, 62, it was said:

"By judicial construction, however, the statute has become controlling on an abutting landowner's right to damages for impairment of ingress and egress, Barron v. Memphis, 113 Tenn. 89, 80 S. W. 832; Knox County v. Lemarr, 20 Tenn. App. 258, 97 S. W. (2d) 659, as well as the right to damages for interference with natural drainage, Hollers v. Campbell County, 192 Tenn. 442, 241 S. W. (2d) 523.

"In our opinion, if it is to apply at all to such cases, it should be applied in a manner to afford the landowner the statutory period of one year within which to bring suit after injury or after reasonable notice or knowledge of such injury and damage.

\* \* \* \* \* \*

"The case is different, however, where the possession of the County is lawful and the damage to remaining lands is not reasonably to be foreseen at the time the conveyance is made."

We are of opinion that the statute should not be extended by judicial construction to include cases like the one at bar.

We think the principle to be applied is set forth in Bodne v. Austin, 156 Tenn. 366, at pages 370-371, 2 S. W. (2d) 104, at page 105, where the court states:

" 'Thus a breach may not inflict any immediate wrong on an individual, but neither his right to a rem-

edy, nor his liability to be precluded by time from its prosecution, will commence until he has suffered some actual inconvenience. But it is otherwise where there is a private relation between the parties, where the wrongdoing of one creates a right of action in the other; and it may be stated as an invariable rule that when the injury, however slight, is complete at the time of the act, the statutory period then commences, but, when the act is not legally injurious until certain consequences occur, the time commences to run from the consequential damage, whether the party injured is ignorant of the circumstances from which the injury results, or not.' ''

Also see State for the Use of Cardin v. McClellan, 113 Tenn. 616, 85 S. W. 267.

2. We conclude that the three year statute set out in Section 8598, Wlliams Ann. Code is applicable in this case.

The declaration alleges and the proof shows that the damage complained of occurred within the three year period next before bringing of the suit in April 1954, therefore assignments I and II are overruled.

3. We are of opinion that assignments of error Nos. III and IV are determinative of this case.

Plaintiffs Donahue (incorrectly spelled Donohue in the caption) signed the following two documents:

East Tennessee Natural Gas Company
Special Damage Release

"State *Tennessee* County *Marion* R.W.Ref.——
"Draft No. 3715
1064

"Received of East Tennessee Natural Gas Company the sum of *One Hundred Fifty and no/100—* Dollars ($150.00) in full payment and settlement for all damages, either tangible or intangible, whether

on right-of-way or off right-of-way, to all property, either real or personal, owned by the undersigned, arising out of or in connection with the construction of a pipeline under, upon and across the land described in right of way agreement recorded in Vol. *4X*, page *522* of the public Records of *Marion County*, State of *Tennessee* and the undersigned does hereby release and discharge East Tennessee Natural Gas Company, its agents, and contractors, from all liabilities therefor.

"The undersigned warrants that there has been no change in title since the execution of the above mentioned right of way agreement.

"Executed on *March 27, 1951*

"Witness

"/s/*F. Nat Brown*

/s/ *Joe Donahue*

Joe Donahue

"/s/ *Clara Bell Donahue*

Clara Bell Donahue"

"Investigation and Report of Clean Up

"*Sequachee, Tennessee*                    *11-1-50*

City        State                          Date

"East Tennessee Natural Gas Company (EBASCO Services Incorporated, Agent)

"Gentlemen:

"I have inspected the work performed by your clean-up crews on your right-of-way across the property of *Joe Donahue* situated in *Marion* County, State of *Tennessee* and described as Tract *No. 1323 & 76 1322 & 11*

I hereby certify that said right-of-way has been cleaned up to my complete satisfaction with the following exceptions, to-wit,

"*None*

"By /s/ *Joe Donahue*"

The Mosiers signed similar documents.

Exhibit No. II to the testimony of Frank Mosier is a Special Damage Release signed by Frank Mosier and Thelma Mosier in consideration of $1,000, and is shown on page 135 of the Transcript. Defendant's exhibit No. III to witness Frank Mosier, as shown on page 136 of the Transcript, is an "Investigation and Report of Clean Up" dated 11-8-50 and signed by H. Frank Mosier and is in terms identical with that copied hereinabove and signed by plaintiffs Donohue. It recites "I hereby certify that said right-of-way has been cleaned up to my complete satisfaction with the following exceptions, to-wit: 'none'."

It is to be remembered that these plaintiffs were perfectly familiar with the stream bed in question. They were familiar with the right-of-way and the conditions that surrounded same and they had every right to know, or to expect, that, in times of heavy rains, water in considerable volume would flow down said stream, and they had every reason to expect that, if debris, as they later alleged, was left in, across and around said stream, that it might wash down same and cause such obstruction as did later occur.

The court is of opinion that, when these parties signed the special damage release, as shown hereinabove, it was in contemplation of the parties that it was in compensation for any damage that had occurred, or might occur, with respect to the condition of the right-of-way as it was left by the contractors when they finished their work on same: and the certificates to the effect that the right-of-way had been cleaned up to their complete satisfaction, it seems to us, raises an estoppel which stands squarely across their path of recovery.

The right-of-way agreements made exhibits X and X-1

respectively, as shown on pages 146 and 147 of the Transcript, recite among other things:

"The grantor, his successors, heirs or assigns, reserves the right to fully use and enjoy the said premises except as the same may be necessary for the purposes herein granted; provided, however, that the Grantee shall have the right from time to time to cut and keep clear all trees, undergrowth and other obstructions, whether on said right-of-way and easement or not, that may injure, endanger or interfere with the use of said pipe line or pipe lines or telephone lines or telegraph lines or fittings and appliances appurtenant to any of said lines."

The grantee then agrees to certain other things, including payment for damage to crops, fences, timber, etc. that might arise from laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of, and replacing such pipe lines.

The above mentioned special damage releases were signed subsequent to the foregoing right-of-way agreements and after the work in question had been completed.

It therefore appears that damages that reasonably might have been expected to result from the work already done by the defendant on its right-of-way, was in contemplation of the parties when they signed the foregoing releases and agreements.

When the release and clean up reports were signed by each of the plaintiffs herein, the work of cleaning the right-of-way and laying the pipe line in question had been completed. It is not alleged in the declaration, nor shown in the proof, that any act of the defendant subsequent to the signing of the afore-mentioned documents, caused the damage which is complained of.

Of course, if some wilful act, or act of negligence on the part of defendant, occurring after the aforementioned releases were signed, resulted in damage to plaintiffs, said releases would not preclude plaintiffs from recovering, but such is not the case here.

If, as alleged in the declaration, debris from the right-of-way of the defendant was washed down in the creek adjacent to, or on plaintiffs' property, and caused the damage herein sued for, said debris was on the right-of-way at the time the releases were signed.

The plaintiffs, in said documents, asserted that they had inspected the condition of the right-of-way and were entirely satisfied with the clean up job that had been done by the defendant.

The pictures which are made exhibit to the testimony in this case, show that the creek flowed down through a hilly or mountainous section covered with trees where much debris existed all along its banks, and, while there is some evidence on which the jury could have concluded that the debris which dammed up the creek, came from the right-of-way of defendant, nevertheless, it seems certain from the evidence, that much of it came from other sources which were naturally present in this area.

Be this as it may, plaintiffs knew, or by the exercise of reasonable care, should have known, that such debris as they saw there at the time they signed the releases might, in times of heavy rain, wash down the creek and result in damming it up. They knew this perhaps better than did the agents of the defendants.

If, at the time the afore-mentioned releases were signed by the plaintiffs, the damage which they claim to their property was reasonaby foreseeable, then it must be considered that it was within the contemplation of the parties when they signed said releases.

On the other hand, if such a situation as that which later developed, could not have been foreseen by the exercise of reasonable care, then it cannot be successfully contended that the defendant was guilty of actionable negligence.

3. For a statement of the legal principles involved see Jones v. Oman, 28 Tenn. App. 1, 184 S. W. (2d) 568 and the cases therein discussed and cited with approval, particularly Hord v. Holston River R. Co., 122 Tenn. 399, 123 S. W. 637; Newberry v. Hamblen Co., 157 Tenn. 491, 9 S. W. (2d) 700 and Central Realty Co. v. City of Chattanooga, 169 Tenn. 525, 89 S. W. (2d) 346.

On the question of estoppel see Molloy v. City of Chattanooga, 191 Tenn. 173, 232 S. W. (2d) 24, 404. Also Church of Christ v. McDonald, 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173.

In Walker v. Walker, 3 Tenn. Civ. App. 670, it was said:

"Admissions whether of law or of fact which have been acted upon by others are conclusive against the party making them and all cases between them and the person whose conduct he has thus influenced."

4. In view of the foregoing it is unnecessary to discuss the remaining assignments of error.

5. It results that assignments Nos. III and IV will be sustained the judgment of the trial Court reversed, and the cause dismissed at the cost of the plaintiffs (defendants-in-error here) in each case.

Reversed.

Felts and Hickerson, JJ., concur.