# WILLIAM R. KIND and Wife, Earlean Kind v. JOHNSON CITY.—478 S.W.2d 63

Eastern Section. November 18, 1970.

Certiorari Denied by Supreme Court March 15, 1971.

James H. Epps, III, Johnson City, for appellant, Johnson City.

Lodge Evans, Elizabethton, for appellees, William R. Kind and wife, Earlean Kind.

COOPER, P. J. (E. S.). William R. Kind and wife Earlean Kind brought this suit against the City of Johnson City to recover damages to real and personal property allegedly resulting from a diversion of surface water onto complainants' property through a drainage system referred to as a "concrete box" constructed by the defendant City. Complainants alleged, in substance, that the drainage system was negligently built and negligently maintained and constituted a nuisance which posed a constant threat to the property of the complainants and caused extensive damage by flooding, on September 7, 1969.

In its answer, the City admitted it had constructed the "concrete box" and had made improvements to Althea Street in the vicinity of complainants' home, but denied the improvements affected the natural flow of surface water or changed the drainage pattern of the area. The defendant also denied it had negligently constructed or negligently maintained the drainage system on Althea Street. The City averred that the "concrete box" was constructed and the improvements to Althea Street were made many years before complainants' house was constructed and plead both the one year (T.C.A. 6-1012 and 23-1424) and three year (T.C.A. 28-305) statutes of limitation.

On trial, which was by oral testimony, the Chancellor made a comprehensive finding of facts, including a finding that:

(1) "the storm sewer outlet and drainage system or facility maintained (by the City) on Althea Street is inadequate to carry the water from ordinary and usual rainfall in the area without producing flooding on complainants' property;

(2) "there is proof that large quantities of debris, refuse or rubbish accumulates in the storm sewer box which obstructs the flow of water when there is a rain in the area; and

(3) "that the condition of the sewer outlet and drainage system produces a continuous threat and danger of flooding to complainants' property and is a nuisance, the nature of which prevents the running of the statute of limitations."

The Court further found that as the result of the nuisance constructed and maintained by the defendant, complainants suffered damages by flooding on September 7, 1969, and fixed the amount of damages at $5,000.00.

Defendant has appealed insisting there is no evidence to support the Chancellor's findings of fact or his conclusions at law. No complaint is made by the defendant either as to the amount of damages or the method used in determining damages suffered by complainants from the flooding of their property.

The concrete box, which complainants fix as the source of their trouble is located on city property approximately

sixty-five feet from complainants' house. The box is built over the entrance to a natural cave, which is a natural drainageway for surface water in the area of complainants' house, to channel water into the cave and to trap trash and prevent the entranceway to the cave, and the cave itself, from filling with debris. So far as the evidence shows no major change has been made in the box since its construction.

In 1963, the City improved Althea Street by constructing gutters and catch-basins and by paving the street. Water from the improved drainage facilities was piped into the concrete box and into the cave.

Since 1963, as the drainageway is constructed, rain falling on Althea Street and on the area to the north of Althea Street is collected in catch-basins and is carried to the concrete box through a twenty-one inch pipe. The water is drained from the box into the cave through a twenty-one inch pipe in the floor of the box. The mouth of the floor drain is covered by a manhole cover that has three holes in it the size of a thumb. The evident purpose of the cover and the small holes is to prevent debris from flowing with the water into the cave.

The City cleans the debris from the concrete box "about three times a year." The box was last cleaned in November, 1969, approximately two months after the flooding that resulted in this suit, and the City removed enough debris to fill a dump truck.

Several witnesses testified they had seen water gushing from a manhole located in the top of the "concrete box" on several occasions, including the night of September 7, 1969, when complainants' home was flooded.

The evidence shows complainants made numerous complaints to the City officials of the flooding, and its cause, without avail, the principal reasons being the cost to the City of correcting the drainage problem.

■ ■ As pointed out by Judge McAmis in Dixon v. City of Nashville, 29 Tenn.App. 282, 203 S.W.2d 178, 182, "[a] wrongful interference with the natural drainage of surface water causing injury to an adjoining landowner constitutes an actionable nuisance. Talley v. Baker et al., 3 Tenn.App. 321; 46 C.J. 727. And a municipality is liable if it creates a nuisance even in pursuing a public work. Chattanooga v. Dowling, 101 Tenn. 342, 47 S.W. 700; Nashville v. Mason, 137 Tenn. 169, 192 S.W. 915 . . ."

■ In this case the City elected to channel surface water into the natural drainageway by way of a "concrete box" it constructed and then "plugged" the pipe leading from the concrete box into the natural drainageway, both by a metal manhole cover and with debris too large to pass through the small holes in the cover. It is readily apparent that whenever there is a moderately heavy rainfall, water will be carried to the concrete box faster than it can escape through the "plugged" floor drain. As the box fills with water and as pressure builds up, water will be forced out of the top of the box and flow away from the cave entrance onto complainants' property. This is what happened on the night of September 7, 1969, and what the complainants can expect to happen on other occasions when there is a heavy rainfall.

We agree with the Chancellor that the condition created and maintained by the City, as described above, constitutes an actionable and continuing nuisance and

that the City is liable to complainants for the damages sustained by them as the result of the flooding on September 7, 1969.

■ The City, pointing to evidence that the concrete box was built in 1958 and the improvements to Althea Street were made in 1963, insists the complainants "have slept on their rights" and that their claim against the City for damages from flooding is barred by the several statutes of limitations. We can not agree. The nuisance created and maintained by the City is temporary and continuous in character, and the very continuation of the nuisance is a new offense entitling complainants' to recover damages accruing within the statutory period next preceding the suit, although more than the statutory period has elapsed since the creation of the nuisance. See Caldwell v. Knox Concrete Products, Inc., 54 Tenn. App. 393, 391 S.W.2d 5; Louisville & N. Terminal Company v. Lellyett, 114 Tenn. 368, 403, 85 S.W. 881, 890, 1 L.R.A.,N.S., 49; Nashville v. Comar, 88 Tenn. 415, 12 S.W. 1027. See also 39 Am. Jur., Nuisances, Sec. 141, p. 403, wherein the applicable rule of law is stated as follows:

". . . [W]here the nuisance is temporary and continuous in character, and gives rise to separate causes of action, a recovery may be had for damages accruing within the statutory period next preceding the commencement of the action, although more than the statutory period has elapsed since the creation of the nuisance."

Judgment affirmed. Costs incident to the appeal are adjudged against the City of Johnson City and its surety.

Parrott and Sanders, JJ., concur.