Norman **BURCHFIELD,**
Claimant–Appellee,

v.

**STATE of Tennessee,**
Defendant–Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Oct. 6, 1988.

Application for Permission to Appeal
Denied by Supreme Court
June 5, 1989.

George H. Coffin, Jr., Asst. Atty. Gen., Nashville, for defendant-appellant.

Richard T. Wallace, Sevierville, for claimant-appellee.

## OPINION

GODDARD, Judge.

This appeal results from a claim made by Norman Burchfield against the State of Tennessee for creating a nuisance which resulted in the flooding of Mr. Burchfield's property. The claim was originally before the Claims Commission and transferred by the Commission to the Court of Claims pursuant to T.C.A. 9–8–402(c).

The Claims Commissioner found that in the construction of U.S. Highway 411, which is also State Highway 35, the State created a nuisance by installing a drain under the road at an insufficient depth which resulted in the flooding of Mr. Burchfield's property. The Court found the nuisance to be temporary and awarded damages in the amount of $17,100, as the diminution and rental value of the property for a period of one year prior to the claim

being filed until the date of judgment. The Commissioner denied Mr. Burchfield's prayer for injunctive relief against the State.

The State appeals contending that the flooding of Mr. Burchfield's land amounted to a taking and Mr. Burchfield's exclusive remedy—inverse condemnation—was barred by T.C.A. 29–16–124.[1] Mr. Burchfield also raises issues on appeal, insisting that under the proof the damages awarded by the Commissioner were inadequate and that he should have issued a mandatory injunction requiring the State to abate the nuisance.

The evidence adduced at trial does not preponderate against the Commissioners' finding of fact as follows:

Norman Burchfield became the owner of a piece of property in Sevier County on the East side of Walnut Grove Road close to the middle prong of the Little Pigeon River. He became the owner of this farmland in the 1940's. Land at that time could be described as lowland lying close to the river, and having some swampy characteristics. In the 1940's and early 1950's, there was a drainage problem on this property.

Sometime in the 1950's the claimant hired a construction company to dig a drainage ditch from one end of his property to the middle prong of the Pigeon River, said drainage ditch being on the East side of Walnut Grove Road. After the ditch was installed, the property drained satisfactorily.

Between 1962 and 1964, US Highway 411 was built through the property cutting off the four acres in question from other property which was adjacent to the River. At the time of the construction of that road, a 42 inch drainage tile was installed from the South side of the road where the four acres involved were to the North side of the road for drainage

of water to the Pigeon River. A few years later, the claimant developed some of his property on the South side of US Highway 411 by placing in that area a Plaza Shopping Center. That shopping center was adjacent to the highway, and the property of the claimant was filled with fill dirt up to road level. The parking lot was black topped and several buildings were located thereon.

The property since that time has not drained properly and water stands on the property for a significant period of time causing the land to be swampy and greatly prohibiting the usefulness of that property.

. . . .

While there can be little doubt but that the building of the plaza, and the raising of the plaza center by filling of dirt, would increase the runoff on the property on the South side of US Highway 411, it is the opinion of the Commissioner that this did not cause the standing of the water on that property. An increase in the runoff on the property would, of course, cause additional water to have to travel under the road through the culvert on its way to the Pigeon River. However, that would not explain the fact that the water remains on the property for long periods of time after the rains have concluded. The standing of water on the property could only result from an inability of the water to flow adequately and properly from the South side of the road to the North side of the road. The land in question is extremely flat. The invert of the culvert under the road was such that it appears that it was not adequately below the ditch line so as to allow the flow of water in a timely manner from the South side of the road to the North side of the road.

The report of Barge, Waggoner, Sumner, and Cannon, (Exhibit 3) concludes

1. *29–16–124. Limitation of owners' actions.*—The owners of land shall, in such cases, commence proceedings within twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun; saving, however, to unknown owners and nonresidents, twelve (12) months after actual knowledge of such occupation, not exceeding three (3) years, and saving to persons under the disabilities of infancy and unsoundness of mind, twelve (12) months after such disability is removed, but not exceeding ten (10) years.

that the 42 inch pipe appeared to be installed too high in elevation to allow reasonable drainage of the ditch. That report further states that the invert of the culvert was only .6 feet below the ditch bottom, 700 feet upstream from the that [sic] culvert, resulting in a grade of less than .1 percent, a grade difficult to achieve and more difficult to maintain. The report further states that the top of the culvert was .9 feet above the road adjacent to the property meaning that the full use of the culvert would be impossible without significant flooding.

Furthermore, nothing that the claimant could do on his property would alleviate the flooding conditions which exist. Any deepening of the ditchline to adequately drain the water from the property would be limited because of the height of the culvert which runs under the road. From the evidence of the experts who testified, the only way to alleviate the problem would be to have a culvert run under the road which was lower in elevation than the one which presently exists. Any other work on the South side of the road without the additional culvert work would be useless and ineffective. As testified by Hassell Wolfe, the culvert as it is presently existing, and which was existing at the time the road was built, would cause the backing up of the water and the ponding effect on the property owned by Mr. Burchfield.

In support of its issue on appeal the State relies upon the Supreme Court case of *Pleasant View Utility District v. Vradenburg,* 545 S.W.2d 733 (Tenn.1977), which apparently was not called to the attention of the Commissioner, and the Claimant, *Dixon et al. v. City of Nashville,* 29 Tenn.App. 282, 203 S.W.2d 178 (1946); *Kind v. Johnson City,* 63 Tenn.App. 666, 478 S.W.2d 63 (1970); *Butts v. City of*

*South Fulton,* 565 S.W.2d 879 (Tenn.App. 1977); *Pate v. City of Martin,* 614 S.W.2d 46 (Tenn.1981); and *Hayes v. City of Maryville,* 747 S.W.2d 346 (Tenn.App.1987). These cases and others which touch on the subject will be discussed in chronological order. In our discussion we will · use present code sections, although some of the cases refer to prior ones.

### *Dixon et al. v. City of Nashville* 29 Tenn. App. 282, 203 S.W.2d 178 (1946).

The plaintiff sued for damage to realty occasioned by construction of a street which interfered with the natural drainage of surface water. The trial judge dismissed the bill. The Court of Appeals reversed, holding that the bill alleged a nuisance for which a municipality may be liable. The Court also held that T.C.A. 7–31–112,[2] relating to liability of cities for changing the grade of streets, but limiting time for filing suit to one year was not applicable to the facts of that case because "the construction of the drain in the manner shown was not necessary and it was negligently constructed and maintained."

### *East Tennessee & W.N.C.R. Co. v. Gouge* 30 Tenn.App. 40, 203 S.W.2d 170 (1947).

This was a suit against the Railroad for damage to realty, resulting from change in water flow occasioned by the straightening of a curve in railroad bed. A judgment for the plaintiff of $1200 was reduced by trial judge to $600. On appeal the defendant attempted to rely on T.C.A. 29–16–124, the one-year statute of limitations. The principal issue before the Court was whether the statutory limitation could be urged for the first time on appeal, and this turned on whether it was a limitation of remedy which may not be raised for the first

**2.** *7–31–112. Damage from change of grade or repair.*—When any owner of real estate in any municipality shall sustain any damage to his property by reason of any change made in the natural or established grade of any highway, street or alley, or by reason of the raising or lowering of such grades, or other acts done for the purpose of improving or repairing such ways, the owner shall be paid all damages there-

for by such municipality, which damages may be recovered by suit brought at any time in one (1) year from the completion of or the cessation of such works, acts, or improvements; but all benefits accruing by reason of such improvements, acts, or works shall be allowed to affect, reduce, and offset the damages hereinbefore provided for.

on appeal, or a limitation of right, which may. The Court found it was a limitation of remedy and did not entertain that defense.

### Hollers et al. v. Campbell County 192 Tenn. 442, 241 S.W.2d 523 (1951).

In this case the county was sued for damages for raising grade of pike causing water draining on said pike to flow on the plaintiff's property, causing the soil to become damp and soggy. The trial court sustained demurrer on the ground that a county is not liable in tort, even for a nuisance. The Supreme Court reversed finding that the allegations of complaint were sufficiently broad to embrace a theory of inverse condemnation.

### Donohue v. East Tennessee Natural Gas Co. 39 Tenn.App. 438, 284 S.W.2d 692 (1955).

This is a suit by landowners against the gas company for damage to their realty occasioned by the gas company laying a gas line which changed the natural drainage of the mountain side washing debris downstream in wet weather and thereafter causing an obstruction. Although the case was decided for the defendant on other grounds, the Court found that under the facts developed the action of the gas company did not amount to a taking which would give rise to a statute of limitation defense of T.C.A. 29–16–124.

### Murphy v. Raleigh Utility District 213 Tenn. 228, 373 S.W.2d 455 (1963).

The complainant sued to obtain an injunction to restrain defendant from releasing backwash water across complainant's property on the theory that defendant had created a nuisance. The trial court's dismissal of the action was affirmed on the ground that the release of the water amounted to a taking by an entity clothed with the power of eminent domain, and as such action must have been brought within the period prescribed by T.C.A. 29–16–124. The court did point out that in this case, as contrasted with Donohue v. East Tennessee Natural

Gas Co., supra, the acts of the defendant were intentional.

### Jones v. Hamilton County 56 Tenn.App. 240, 405 S.W.2d 775 (1965).

This was a suit against the county for damages to realty occasioned by change in the natural drainage of surface water as a result of the construction of a highway near the plaintiff's property. The declaration was predicated on the creation of a nuisance, and also the taking of property for public use. The plaintiff received a judgment based upon a jury verdict of $1000 for the creation of a nuisance. The Court of Appeals reversed because a county is not liable for a nuisance. It did remand for a new trial, finding that the acts of a county amounted to a taking and the county had not carried its burden to show that the one-year statute of limitations, T.C.A. 29–16–124, had run.

### Monday v. Knox County 220 Tenn. 313, 417 S.W.2d 536 (1969).

This was a suit for water damage occasioned by failure of the defendant to provide adequate drainage in the construction of a new highway. The bill alleged that the defendant created a private and public nuisance and sought mandatory injunction to have the nuisance abated. The chancellor dismissed the bill, finding the allegations amounted to a taking by the defendant under the right of eminent domain and exclusive remedy would be in the circuit court under T.C.A. 29–16–123. The Supreme Court affirmed the trial court, even though it was alleged that the condition causing the damage could be easily corrected, holding that courts have no authority to order a change in construction.

### Jones v. Cocke County 57 Tenn.App. 496, 420 S.W.2d 587 (1967).

The plaintiff brought an inverse condemnation suit seeking damages for flooding of his property as a result of the county constructing a bridge and approaching embankment. The trial judge's dismissal of the suit against Cocke County was reversed. The Court of Appeals points out

the following (57 Tenn.App. at 500, 420 S.W.2d at 589):

Our courts have said for there to be a taking, it is not necessary for the owner to be entirely deprived of the use of the property. Any destruction, restriction or interruption of the common and necessary use may constitute a taking. *Lea v. Louisville & N.R. Co.,* 135 Tenn. 560, 188 S.W. 215.

Actual or physical entry is not necessary. A landowner may have a right of action for the interruption of ingress or egress or from the interference or diverting the natural drainage. *Morgan County v. Neff,* 36 Tenn.App. 407, 256 S.W.2d 61; *Hollers v. Campbell County,* 192 Tenn. 442, 241 S.W.2d 523; *Donahue v. East Tenn. Natural Gas Co.,* 39 Tenn. App. 438, 284 S.W.2d 692.

### *Kind v. Johnson City* 63 Tenn.App. 666, 478 S.W.2d 63 (1970).

The complainant sought to recover for damages to real and personal property, resulting from a diversion of surface water onto his property through a drainage system constructed by the city. The chancellor found in favor of the complainant and awarded damages in the amount of $5000. His award was affirmed by the appellate court on the theory that a city may be liable for a nuisance. Although several statutes of limitations were pleaded, apparently there was no defense grounded upon the theory that the action of the city constituted a taking.

### *Pleasant View Utility District v. Vradenburg* 545 S.W.2d 733 (Tenn.1977).

This was a suit to enjoin a utility district from discharging waste water onto respondent's land, resulting in a swampy area which was a breeding ground for mosquitoes and bacteria. The chancellor dismissed on the authority of *Murphy v. Raleigh Utility District,* supra. The Court of Appeals reversed the chancellor. The Supreme Court reversed the Court of Appeals, holding that the action of the defendant was a taking because it had power of eminent domain and that the landowner's remedy is an action for damages under the inverse condemnation statute and not injunctive relief. The Court further held that the damage is subject to the one-year statute of limitations applicable to such action, T.C.A. 29–16–124, and as such was barred.

### *Butts v. City of South Fulton* 565 S.W.2d 879 (Tenn.App.1977).

In this case the city constructed a road which interfered with the natural surface drainage, causing water to back up to the injury of plaintiffs' property on a higher level. Although the Court reversed the issuance of a mandatory injunction, it held that T.C.A. 7–31–112, which requires suit to be brought within one year, for damages occasioned by cities changing grade of a road, was inapplicable to a nuisance under the authority of *Dixon v. City of Nashville,* supra, and *Kind v. Johnson City,* supra.

### *Pate v. City of Martin* 614 S.W.2d 46 (Tenn.1981).

This was a suit to abate a nuisance and recover damages because of the odors emanating from a sewage lagoon maintained by the city. The trial court found the lagoon to be a permanent nuisance and awarded damages accordingly. The Court of Appeals found the nuisance to be temporary, and because the plaintiff had not proved damages properly for a temporary nuisance dismissed the case. The Supreme Court concurred with the Court of Appeals that the nuisance was temporary but remanded the case for a new hearing as to damages. No contention was made regarding a taking by the city which would give rise to the one-year statute of limitations, T.C.A. 29–16–124.

### *Hayes v. City of Maryville* 747 S.W.2d 346 (Tenn.App.1987).

The principal issue in this case was whether city's changing two-lane street to one-lane street amounted to a taking. The trial court said yes, the Court of Appeals said no. The other issue was whether

judgment for $2000 based upon a jury verdict for water run-off damage, subsequently corrected by the city, was proper. Although the plaintiff proceeded on the theory of inverse condemnation as to water damage at the trial, the appellate court found that the claim° should have been brought upon the tort theory of temporary nuisance under the Governmental Tort Liability Act and, consequently, should have been tried by the trial judge without a jury.

*Dixon* and *Butts* both dealt with a statute specifically addressing change of grade by cities, and in neither was the contention made that the action of the city amounted to a taking. *Jones v. Cocke County* points out what may amount to a taking, but in that case, as is true in *Kind* and *Pate,* no contention was made that the claim was barred by T.C.A. 29–16–124.

*Gouge, Hollers* and *Jones v. Hamilton County* recognize that discharging or damming water to the injury of a landowner may be a taking.

Three cases, however, *Murphy, Monday* and *Pleasant View Utility District,* all Supreme Court cases, specifically uphold such a defense under factual situations similar to the case at bar.

The only cases which would appear to be contra are *Donohue* and a recent opinion of this Court, *Hayes.* In the former it was specifically held that the action on the part of the defendant did not amount to a taking and in the latter, although not expressly held, the same may be inferred in that water discharge was only temporary and later corrected by the city.

■ Upon consideration of all the cases, we conclude that whether a taking has occurred depends on the facts of each case, specifically the nature, extent and duration of the intrusion.

■ As already noted, we believe the facts of this case more nearly parallel the cases where a taking has been held to occur than those where it has not, and consequently find as to this issue in favor of the State.

Before concluding as to this point, we do note that the Tennessee Claims Commission Act which specifically included the words "nuisance" was enacted in 1984. We do not think this has any effect on the present litigation in that the taking had occurred some 20 years prior to the effective date of the Act.

Because this Court may be reversed by the Supreme Court on the State's issue—an occurrence which the author of this opinion has found not to be without precedent—we deem it appropriate to address the issues on appeal raised by the Claimant.

■ As to his first, the Claimant testified that the diminution and rental value of the 4.80 acres, principally inundated, was $25,000 per year, and as to the entire unimproved tract[3] containing 7.35 acres, $38,000 per year. The Claimant called an expert witness who testified a diminution and rental value of $19,680 per year and $30,135 per year as to the same two tracts. The State's expert witness testified there was no diminution in rental value and that the property would rent for $300 per acre per year with or without the flooding.

The Claimant assails the testimony of the State's expert, contending he only valued the property for farming purposes and failed to give consideration to its commercial value. It is true that during the course of the expert's testimony he did state that he considered it as farming property, but at another point he also stated he considered all uses for which it was susceptible in arriving at his evaluation.

We accordingly conclude that the testimony was properly received and the objection should go to its weight.

■ Taking this view of the matter, a range of proof was from $31,000 per year to $0 per year. The amount awarded by the Commissioner, $7200 per year, or $17,100 for the two years 4.5 months in question, was well within the range of proof and the evidence does not preponderate against such a finding.

3. A portion of Claimant's property was improved with a shopping center.

■ Moreover, even if the testimony were to be excluded, the Commissioner was not bound by the opinion of the Claimant or his expert witness, but was free to exercise his own judgment upon consideration of the whole record.

In *Ford Motor Co. v. Taylor*, 60 Tenn. App. 271, 290, 446 S.W.2d 521, 529 (1969), the Court correctly observed:

Neither the trial court nor this Court is bound by the specific monetary value placed upon the tractor by the plaintiff. In the case of *Stevens v. Moore*, 24 Tenn. App. 61, 139 S.W.2d 710 (1940) plaintiff sued for damages to a rug and testified that its value was $50.00 and that it had been rendered worthless. Defendant's evidence denied any damage to the rug whatsoever. The trial judge instructed the jury that they must find for the plaintiff for $50.00 or nothing. The Court of Appeals held the instruction erroneous, reversed and said:

"But the rug was introduced in evidence and inspected by the jury, and the jury had the right to exercise their common sense and common knowledge and experience in determining the value of the rug and whether or not it is now worthless.

'Usually, testimony of a party or other interested witness as to the value of property involved or the amount of the damage is not conclusive, though not contradicted.' 15 Am.Juris., page 801, sec. 361; Annotation, 72 A.L.R., page 55." 24 Tenn.App. at p. 75, 139 S.W.2d at p. 719.

In the present case the trial court and this Court have the power and duty to honestly estimate the fair compensation due plaintiff without being bound to accept the exact amount proposed in the testimony of any particular witness. The amount of difference in value testified to by plaintiff ($5,366.00 minus $1,700.00 equals $3,666.00) is deemed excessive. Some lesser amount would be more in accord with the evidence in the record.

■ As to the Claimant's second issue, the Commissioner denied a mandatory in-junction because he was of the opinion that he only had the authority granted to him under the Act which specifically limited his jurisdiction to monetary claims against the State. We concur in the Commissioner's conclusion.

For the foregoing reasons the case is reversed and the claim dismissed except as it relates to costs below and for that purpose remanded for collection thereof. The costs of appeal, as well as before the Commissioner, are adjudged against the Claimant.

SANDERS, P.J. (E.S.), and ANDERSON, J., concur.