IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 8, 2021 Session

**A.B. NORMAL, LLC v. STATE OF TENNESSEE**

**Appeal from the Tennessee Claims Commission**
**No. T20192248-1      James A. Haltom, Commissioner**

_____

**No. M2020-01390-COA-R3-CV**

_____

A property owner whose property was destroyed by a lightning-induced fire filed suit against the State on the theory of negligence. The Claims Commission dismissed the case after concluding that any negligence on the part of the State was not the proximate cause of the property owner's injury. Finding no error, we affirm the decision of the Claims Commission.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KRISTI M. DAVIS, J., joined.

Cody Russell Galaher, Franklin, Tennessee, for the appellant, A.B. Normal, LLC.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and William Michael Evans, Assistant Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

A.B. Normal, LLC, ("A.B. Normal") owns real property located off of State Highway 85 in Gainesboro, Tennessee. Karen Isenhower and Charles Cummings[1] lived in a house on the property. In September 2018, Ms. Isenhower and Mr. Cummings contacted the Tennessee Department of Transportation ("TDOT") about problems they observed with an easement bridge that provided the sole means of accessing the property. Specifically,

_____

[1] According to the record, Ms. Isenhower is a representative of A.B. Normal, and Charles Cummings is her son.

Ms. Isenhower and Mr. Cummings informed TDOT that the property became entirely inaccessible any time there was a hard rain because the bridge would flood and become impassible.

Lisa Scantland, a TDOT employee, inspected the bridge in September 2018. She returned to the property in December 2018 along with one of her co-workers, Joshua Neal, to inspect the bridge for the flooding issues that frequently left the property inaccessible. Thereafter, Bo Hoskins, a TDOT engineer, conducted a teleconference with Mr. Neal, Ms. Isenhower, and Mr. Cummings. During this teleconference, Mr. Cummings expressed his safety concerns that the bridge's tendency to flood would prevent authorities from reaching the property during an emergency. Mr. Hoskins concluded, however, that there were no exigent circumstances or concerns for TDOT to address at that time.

Approximately two months later, on February 6, 2019, lightning struck the property during a heavy thunderstorm, causing a fire in the house. Mr. Cummings called 911 and, when firefighters arrived, the fire had destroyed only the bathroom. One fire truck managed to cross the bridge but became immobilized. After making minimal progress combating the fire, the firefighters were ordered to evacuate and let the house burn due to safety concerns regarding floodwater encroaching the bridge. Thereafter, additional emergency responders arrived on the scene but were unable to cross the bridge because it was submerged in more than thirty inches of water. The fire completely destroyed the house and eventually burned at least eight acres of farmland used for growing hay.

A.B. Normal filed a claim for damages against the State in the Division of Claims and Risk Management on April 12, 2019. When the claim was transferred to the Tennessee Claims Commission several months later, A.B. Normal filed a formal complaint alleging that it was entitled to $350,000 in damages due to the State's negligence. According to A.B. Normal, the State was responsible for maintaining the bridge but failed to do so, resulting in the bridge flooding and the property being inaccessible by emergency services the night of the fire.[2] The State responded by filing a motion to dismiss the complaint pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim upon which relief could be granted, arguing that A.B. Normal could not prove proximate cause because lightning, rather than the flooded bridge, caused the fire that destroyed the property.

After hearing the matter, the Claims Commission granted the State's motion and dismissed the case based on its conclusion that "lightning started a fire, which was the proximate, or legal cause of the plaintiff's injury. The lightning was the substantial factor in the harm done to [A.B. Normal], as opposed to anything the State did or did not do."

---

[2] In the complaint, A.B. Normal also asserted a claim for an injunction ordering the State to "promptly repair or adequately replace" the bridge. The Claims Commission dismissed this claim because it lacked jurisdiction over such a claim pursuant to Tenn. Code Ann. § 9-8-307(a)(1), which limits the Claims Commission to granting monetary relief. *See Burchfield v. State*, 774 S.W.2d 178, 184 (Tenn. Ct. App. 1988).

A.B. Normal appealed and presents a solitary issue for our review: whether the trial court erred in granting the motion to dismiss.

STANDARD OF REVIEW

A motion to dismiss a complaint pursuant to Tenn. R. Civ. P. 12.02(6) "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A defendant filing "a motion to dismiss 'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" *Id.* (quoting *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)). A court resolves a Rule 12.02(6) motion "by examining the pleadings alone." *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015).

When determining whether a complaint should be dismissed for failure to state a claim, the court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002)). A motion to dismiss should be granted if it appears that the plaintiff cannot prove any set of facts in support of the claim entitling him or her to relief. *Webb*, 346 S.W.3d at 426. A trial court's decision to grant or deny a motion to dismiss involves a question of law which we review de novo with no presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

ANALYSIS

It has long been established that "'[t]he State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued.'" *Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) (quoting *Brewington v. Brewington*, 387 S.W.2d 777, 779 (Tenn. 1965)). The State has consented to be sued for negligently designed and maintained state highways and bridges, as well as for dangerous conditions on state maintained highways that present a foreseeable risk and of which the State had sufficient prior notice. Tenn. Code Ann. § 9-8-307(a)(1)(I), (J). To prevail on a negligence claim, a plaintiff must prove five essential elements: "1) a duty of care owed by the defendant to the plaintiff; 2) conduct falling below the applicable standard of care amounting to a breach of that duty; 3) an injury or loss; 4) causation in fact; and 5) proximate, or legal, cause." *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013).

At issue in this case is the proximate cause element. Proximate cause is a type of causation that focuses on "'whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred.'" *Id.* (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). It puts "a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach,

defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Hale v. Ostrow*, 166 S.W.3d 713, 719 (Tenn. 2005). In other words, a negligent act is the proximate cause of an injury if the injury "'is the natural and probable consequence'" of the negligent act. *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 181 (Tenn. 1992) (quoting *Ward v. Univ. of the South*, 354 S.W.2d 246, 250 (Tenn. 1962)). Tennessee courts use a three-pronged test to determine proximate cause:

> "1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and 2) there is no rule or policy that should relieve the wrongdoer from liability because the manner in which the negligence has resulted in the harm; and 3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence."

*King*, 419 S.W.3d at 247 (quoting *Hale*, 166 S.W.3d at 719).

Here, the determination of whether the State's supposed negligent design and maintenance of the bridge was the proximate cause of A.B. Normal's injury hinges on the first requirement—whether the flooded bridge was a substantial factor in bringing about the destruction of A.B. Normal's property. The Claims Commission concluded that lightning, not the flooded bridge, was the proximate cause of the injury because it was the substantial factor in causing the fire that destroyed A.B. Normal's property. On appeal, A.B. Normal acknowledges that lightning striking the home started the fire that destroyed the property, but it argues that emergency services could have easily extinguished the fire before it entirely consumed the home and several acres of farmland if the State had repaired the bridge to mitigate or prevent flooding during a heavy rain. Thus, A.B. Normal asserts, the flooded bridge was a substantial factor in bringing about the destruction of the property.

We are unaware of any Tennessee cases directly on point, but we have found two concerning similar issues that provide guidance: *Davis v. Country Club, Inc.*, 381 S.W.2d 308 (Tenn. Ct. App. 1963) and *Hames v. State*, 808 S.W.2d 41 (Tenn. 1991). In *Davis*, a storm arose while a golfer was on a golf course, causing the golfer to seek cover in a weather shelter that was not lightning proof. *Davis*, 381 S.W.2d at 309, 311. The golfer sustained injuries when lightning struck the shelter, and she sued the golf course on the theory that it was negligent in failing to equip the shelter with lightning protection materials. *Id.* at 311. A jury returned a verdict finding the golf course negligent and awarded the golfer damages, but the trial court set aside the jury's verdict and entered a directed verdict finding the golf course was not negligent and dismissing the case. *Id.* at 309. On appeal, this Court affirmed the trial court holding that there was no conduct falling below an applicable standard of care and no proximate causation. *Id.* at 311. The court explained that lightning strikes are acts of God and, "'when an act of God or an accident combines or concurs with the negligence of the defendant to produce the injury,'" the rule

is that "'the defendant is liable if the injury would not have resulted but for his own negligent act or omission.'" *Id.* at 310 (quoting *Ferebee v. Norfolk S. R. Co.*, 79 S.E. 685, 686 (N.C. 1913), *aff'd,* 238 U.S. 269 (1915)). Because the "[b]are possibility" of lightning striking the shelter was too remote to give rise to a requirement of due care, the *Davis* court concluded that legal liability could not be imposed on the golf course. *Id.* at 311.

Many years later, the *Hames* Court considered a similar issue. In that case, the State owned a golf course with no lightning proof shelters on it despite the United States Golf Association's recommendations regarding the prevention or minimization of the dangers of lightning. *Hames*, 808 S.W.2d at 42. When a thunderstorm moved over the golf course, a golfer died from being struck by a bolt of lightning. *Id.* The golfer's widow sued the State under the theory that, although lightning is an act of God, the State was negligent in failing to maintain a warning system or constructing lightning proof shelters. *Id.* at 43. The Claims Commission dismissed the case, but the Court of Appeals reversed and held that "[t]he failure to post signs warning of the hazards of lightning on the golf course coupled with the failure to provide lightning proof shelters, along with the lack of a policy to clear the course during thunderstorms, constitute the proximate cause of [the golfer's] death." *Id.* at 44. Our Supreme Court reversed and reinstated the Claims Commission's dismissal after determining that an act of God caused the golfer's death rather than anything the State may or may not have done. *Id.* at 45. The Court explained:

> As to proximate causation, it appears that the proximate cause of the death was the bolt of lightning, as opposed to anything that the State may or may not have done. While the argument can be made that the absence of lightning proof shelters and warning devices was to some extent responsible for the death, the rule is that where two distinct causes, unrelated in operation, one of them being the "direct cause" and the other furnishing the condition by which the injury was made possible, the former alone is to be regarded as the proximate cause of the result. Even assuming that the failure to provide shelters or utilize warning devices was negligence, such failure merely furnished the condition by which the lightning could strike the decedent.

*Id.* (citing *Ward*, 354 S.W.2d at 251).

Thus, the holdings in *Davis* and *Hames* establish that, if an act of God is the direct cause of a plaintiff's injury while the defendant's act or failure to act merely furnished the condition by which the plaintiff's injury was possible, the act of God was the sole proximate cause of the injury. This principle is in line with holdings in cases from other jurisdictions that have considered facts similar to those in the present case. For instance, in *Hazel v. City of Owensboro*, 99 S.W. 315, 315 (Ky. 1907), the plaintiff's home caught fire "from some cause unknown to her." She discovered the fire shortly after it had started and alerted the local fire department. *Id.* at 315. Because the only street over which the fire department could access her property was in such poor condition that it was

impassable, the fire department was considerably delayed in arriving to combat the fire. *Id.* Consequently, the fire destroyed the plaintiff's home because the fire "was beyond control" when the fire department finally arrived. *Id.* The plaintiff sued the city alleging that her loss "was the result of the negligence of the city in failing to keep its streets in reasonably safe condition for public travel." *Id.* The trial court entered a judgment in favor of the city, and the plaintiff appealed. *Id.*

On appeal, the *Hazel* Court affirmed the trial court after concluding that any negligence of the city was not the proximate cause of the plaintiff's injury. *Id.* at 315-16. As the court explained,

> Her loss directly resulted from the fire. The negligent condition of the street had nothing to do with the origin of the fire. So that the question is, could or would the fire have been extinguished if the street had been in good condition for public travel, or, to put it another way, was the destruction of her house caused by the negligent condition of the street? This is altogether problematical. Certain it is that the city was in no wise responsible for the fire, and in this particular it committed no breach of duty. Nor can it be said that it could reasonably be anticipated by the city that any loss by fire would result from the condition of the street. This being true, it is difficult to perceive upon what ground the city can be asked to respond in damages because its street was out of repair. The connection between the condition of the street and the fire is too remote; in fact there is none.

*Id.* at 316; *see also McAfee v. State*, 149 N.Y.S.2d 547 (N.Y. Ct. Cl. 1956) (affirming dismissal where condition of the road required fire department to take a circuitous route because "the State is not liable for damages caused by fire, due to the impediment or delay of fire apparatus by reconstruction or repair of the highway under legislative authority").

Similarly, in *Sheley v. Swing*, 65 Ohio App. 109, 110 (Ohio Ct. App. 1939), the plaintiff alleged that a fire destroyed her home because the county road abutting her property was impassable for the fire extinguishing equipment used by the fire department due to the city's digging of ditches across the road. The plaintiff sued the county commissioners, alleging that the fire department arrived in time to extinguish the fire but was prevented from doing so due to the county's negligence in maintaining the road. *Id.* at 110-11. The trial court dismissed the case and, on appeal, the Ohio Court of Appeals affirmed after determining that the condition of the road was not the proximate cause of the plaintiff's injury. As the court stated,

> The negligence creating liability is "in not keeping any such road or bridge in proper repair." For what? Plainly, for travel. Its condition in relation to travel would determine whether the duty had been performed. Clearly, the meaning of this would seem to be that to create a liability, the road would

have to be out of repair and that that condition had been caused by the defendants' failure to exercise reasonable care. It is only the conduct in relation to the repair that is of significance in this connection. . . . Until a person proceeds to use the road, he does not bring himself in relation to the county in such a way as to cause the duty to become active for his protection. The negligence inhered in the condition of the road. It was not ambulatory. Juxtaposition could only be created by the public coming to it, and that could only be accomplished by using the highway, or by being so close to the highway that injury was received as a direct result of the defect.

Now the plaintiff was not traveling upon this highway. The members of the . . . fire department were, but no injury was suffered by them. They are not parties to this action. Nothing happened on the highway. No force emanated from it that harmed the plaintiff's property. Until the plaintiff should bring her property within the perimeter of the zone of danger created by the defect, no duty was owing to her, and until a duty arose, no damage suffered could be the proximate result of the defect.

*Id.* at 111-12 (citing 22 Ruling Case Law, 116 Section 5).

Applying the foregoing principles to the facts in the case at bar, we conclude that any negligence of the State in maintaining the bridge was not the proximate cause of A.B. Normal's injury. Nothing emanated from the bridge to destroy A.B. Normal's property. Indeed, the loss directly resulted from a fire ignited by lightning striking the property rather than from anything the State did or did not do. As Billy Joel once sang, "We didn't start the fire. No, we didn't light it, but we tried to fight it." BILLY JOEL, *We Didn't Start the Fire*, *on* STORM FRONT (Columbia Records 1989). Any negligence of the State in designing or maintaining the bridge merely furnished the condition by which the fire could destroy the property. The connection between the cause of the fire and the actions or inactions of the State is too remote. Thus, under these circumstances, the condition of the bridge was not a substantial factor in bringing about the injury—the lightning-induced fire was. The lightning-induced fire is, therefore, the sole proximate cause of A.B. Normal's injury. Based on the foregoing, we conclude that the Claims Commission properly dismissed the case pursuant to Tenn. R. Civ. P. 12.02(6).

CONCLUSION

The judgment of the Claims Commission is affirmed. Costs of this appeal are assessed against the appellant, A.B. Normal, LLC, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE