**George R. CALDWELL, Jr., et al.**

v.

**PBM PROPERTIES.**

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

June 9, 2009 Session.

Sept. 29, 2009.

Permission to Appeal Denied by
Supreme Court March 15, 2010.

See also 2005 WL 2739292

Glenna W. Overton, Knoxville, Tennessee, for the appellants, George R. Caldwell, Jr., and Angie R. Caldwell.

Robert R. Davies, Knoxville, Tennessee, for the appellee, PBM Properties.

**OPINION**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. McCLARTY, J., joined.

George R. Caldwell, Jr., and Angie R. Caldwell ("the Homeowners") sued PBM Properties and others alleging that alterations made by PBM in 1998 to the natural drainage conditions on properties that neighbor the Homeowners created a continuing temporary nuisance that recurred in 2005 and caused flooding to the Homeowners' property. PBM filed a motion for summary judgment on the ground that the cause of action was barred by the statute of repose for improvements to real property found at Tenn.Code Ann. § 28–3–202

(2000). The trial court agreed and granted the motion. The Homeowners appeal. We affirm.

## I.

### A.

Except as specifically noted, the following facts are undisputed for the purposes of this appeal. The Homeowners have owned their home since 1995. In 1998, PBM purchased property in the vicinity of the Homeowners and developed a subdivision known as Blue Grass Heights. Blue Grass Heights is situated at an elevation higher than the Homeowners' property. In the course of building the subdivision, PBM altered the natural drainage and thereby increased the flow of surface water onto the Homeowners' property.

Heavy rains in 1999 flooded the Homeowners' property, including their house. The Homeowners brought suit against PBM[1] alleging that PBM had created a permanent nuisance, or, alternatively, a temporary nuisance. The jury rejected the permanent nuisance argument, but awarded the Homeowners damages in the amount of $3,820.50 for the 1999 flooding. The jury also rejected a claim that the same conditions were responsible for flooding in 2002. Interestingly enough, the Homeowners' own expert acknowledged that the 2002 event was from such heavy rainfall that he could not assign responsibility for the flooding to PBM. We affirmed the judgment entered on the jury verdict in *Caldwell v. PBM Properties,* No. E2004–02512–COA–R3–CV, 2005 WL 2739292 (Tenn.Ct.App., E.S., filed October 24, 2005) (*Caldwell I* ).

Unfortunately, in 2005 after heavy rains in the area, the problem recurred. The Homeowners experienced severe flooding to their property and inside their house with 34 inches of water in the basement. According to the Homeowners, the condition created in 1998 continued unabated and is the cause of the 2005 flooding. According to PBM, the problem was abated as noted by this Court in *Caldwell I.*

### B.

The Homeowners filed this second suit against PBM[2] and Fred Long Construction Concepts on September 12, 2005, alleging that the continuing unabated nuisance resulted in approximately three feet of water in their basement on May 20, 2005. The complaint acknowledges that "PBM undertook development of Blue Grass Heights Subdivision in Spring of 1998, and completed said development on June 30, 1998." The complaint alleges that Fred Long also denuded his property at some unspecified time and thereby increased the water runoff.

PBM filed its motion for summary judgment, and an amended motion, asserting that "this claim is barred by the four-year statute of repose set forth at Tenn.Code Ann. § 28–3–202." The motion was supported by the affidavit of Eric Mosely which states, in pertinent part:

I am a partner in PBM Properties.

1. Shortly before filing the prior suit against PBM, the Homeowners achieved a substantial settlement with at least one other neighboring developer.

2. The complaint includes "Eric Mosely, Partner" as a defendant in the caption but never makes further mention of him. The notice of appeal lists all defendants in the style and purports to appeal "the final judgment from the Trial Court entered on the 8th day of August 2008." The Homeowners' briefs on appeal completely ignore Mr. Mosely. PBM is the only party listed by its attorney as an appellee on PBM's appellate brief. Our holding in this case with respect to PBM applies with equal force to Mr. Mosely.

PBM owned Bluegrass Heights Subdivision in early 1998, and developed Bluegrass Heights Subdivision.

PBM completed all of its development of Bluegrass Heights Subdivision on June 30, 1998, and PBM sold its entire interest in the Bluegrass Heights Subdivision property in June, 1998.

All work on Bluegrass Heights Subdivision was completed by June 30, 1998, and PBM no longer had any ownership in the property as of June 30, 1998.

(Paragraph numbering in original omitted.) The Homeowners responded by conceding "that PBM completed all the work by June 30, 1998," but arguing that "[w]here the nuisance is temporary and continuous in character, and gives rise to a separate cause of action, a recovery may be had for damages accruing within the statutory period next preceding the commencement of the action, although more than the statutory period has elapsed since the creation of the nuisance." The trial court disagreed with the Homeowners and granted PBM's motion. Since the cause of action against Fred Long Construction Concepts remained pending, the Homeowners moved the trial court for permission to appeal with respect to PBM, which the trial court granted. This Court denied the Homeowners' Tenn. R.App. P. 9 application. The summary judgment in favor of PBM became final and appealable when the Homeowners filed a notice and order of voluntary dismissal as to Fred Long Construction Concepts, which the trial court approved and entered on August 8, 2008. This timely appeal followed.

## II.

The parties agree to the substance of the one issue on appeal, but we prefer PBM's statement of the issue as more complete, which we quote verbatim from PBM's brief as follows:

Whether the trial court properly granted summary judgment for [PBM] based on the four-year statute of repose set forth at Tenn.Code Ann. § 28–3–202.

## III.

### A.

Our review of a factual record after a trial court grants summary judgment requires us to view the facts in the light most favorable to the nonmoving party even to the point of discarding any reliance on evidence that tends to counter the non-movant's evidence. *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993). The review is *de novo* with no presumption of correctness as to the trial court's legal conclusions because the entry of a summary judgment involves a pure question of law. *Chrisman v. Hill Home Development, Inc.,* 978 S.W.2d 535, 538 (Tenn.1998).

### B.

We begin our discussion with the language of Tenn.Code Ann. § 28–3–202:

All actions to recover damages for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property, for injury to property, real or personal, arising out of any such deficiency, or for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against any person performing or furnishing the design, planning, supervision, observation of construction, construction of, or land surveying in connection with, such an improvement within four (4) years after substantial completion of such an improvement.

The Supreme Court has expressly held that the quoted statute applies to causes of action based on nuisance in general and water diversion nuisance in particular.

*See Chrisman,* 978 S.W.2d at 535. The Chrismans[3] had purchased a home in 1988 that the defendant Hill Home Development had built in a subdivision. *Id.* at 537. Not long after moving in, the Chrismans experienced flooding but did not bring suit until 1994 after a severe storm flooded the interior of their home. *Id.* After holding that there was no evidence to support a contention that Hill had fraudulently concealed the condition, the Court considered the "claim that . . . Hill Home Development created a continuing nuisance in the construction of the drainage system in [the subdivision]." *Id.* at 539. The trial court had granted summary judgment, but we reversed upon "finding that the continuation of the nuisance thrusts the claim well into any limitations period." *Id.*

The Supreme Court characterized Tenn. Code Ann. § 28–3–202 as a "statute of repose [that] will bar an action four years after substantial completion, regardless of when the plaintiff may have reasonably discovered the injury." *Id.* Having lost the fraudulent concealment argument, and in the face of undisputable proof that construction was substantially completed more than six years before they sued, the Chrismans argued only that the statute applied to negligence claims and not to nuisance claims which allow liability without a finding of negligence. *Id.* at 540. The High Court rejected the argument, noting that by "enacting the statute, the General Assembly intended to insulate contractors, architects, engineers, and others from liability for defective construction or design of improvements to realty where the injury happens more than four years after substantial completion of the improvement." *Id.* The relevant inquiry then became whether the allegations of the complaint sought to impose liability "for any deficiency in the design, planning, supervision, observation of construction, or construction of an improvement to real property." *Id.* at 541. The core allegations of the complaint in *Chrisman* bear repeating here:

> By the construction of [the] subdivision, Defendant Hill has created and maintained a temporary continuing drainage nuisance which has caused flooding onto Plaintiffs' property. Said flooding has inflicted physical harm to Plaintiffs' property and caused and will cause loss of use and enjoyment of Plaintiffs of their property. . . .
>
> * * *
>
> Hill, in his construction of [the] subdivision, was negligent in that measures were not installed in [the] subdivision to prevent the increases in runoff generated by construction of [the] subdivision to not cause flooding of Plaintiffs' property.

*Id.* at 540–41 (omissions in original; paragraph numbers omitted). The Supreme Court found that the complaint, therefore, did allege a "deficiency" in an "improvement to real property" so as to implicate the statute of repose. "At the heart of the plaintiffs' nuisance claim lies the allegation that the drainage system is deficient." *Id.* at 541.

■ As in *Chrisman,* there is no question but that the project in the instant case was substantially completed more than four years before the filing of suit. As previously noted, the Homeowners agree that the project was completed in 1998.

The allegations at the heart of the present complaint are as follows:

> PBM undertook development of Blue Grass Heights Subdivision in Spring of

---

3. The Homeowners' counsel in this matter was also counsel of record for the plaintiffs in *Chrisman.*

1998, and completed said development on June 30, 1998. The pre-existing condition of what is now Blue Grass Heights was in trees and pasture. In the course of said development, PBM had its property denuded which generated increases in runoff and associated sediment which flowed onto Plaintiffs' property beginning in 1998. Plaintiffs' residence lies at a lower elevation than the property owned by PBM. Flood waters and associated sediment has entered and continues to enter Plaintiffs' residence and garage causing damage to personalty and physical damage to Plaintiffs' residence and garage.

In 2002, Plaintiffs tried a nuisance case against PBM, Knox County Circuit Court No. 2–711–99. The jury returned a verdict finding the Defendant PBM one hundred percent (100%) liable for a temporary nuisance. Since the jury verdict, Defendant PBM has done nothing to abate the nuisance. Therefore Plaintiffs' property remains in jeopardy of being flooded. On May 20, 2005, the Plaintiffs suffered flooding to their residence receiving thirty-four inches (34″) of water in their basement. . . .

(Paragraph numbering in original omitted.) We believe that, as in *Chrisman*, these allegations clearly seek to impose liability on the basis of an alleged "deficiency" in an "improvement to real property."

PBM makes the interesting assertion that our affirmance in *Caldwell I* necessarily means that the jury found the nuisance had been abated. On the other hand, the Homeowners argue that the nuisance had not been abated as shown by the 2005 flooding and affidavits of the parties. We are not convinced that our mention of actual abatement in *Caldwell I* was as definite and necessary to the resolution of the case as PBM suggests. Our duty and scope of review in *Caldwell I* was not to divine the particulars of the deliberations or verdict, but rather to look for any material evidence—discarding any contrary proof or inferences—to support a finding that the nuisance was temporary. 2005 WL 2739292 at *6. The nuisance was to be considered temporary if any material evidence in the record supported a finding that the problem could be corrected, *regardless of whether it had been corrected. Id.* at *7. We concluded our discussion with the observation that "[t]here was material evidence presented to the jury for it to find that the nuisance was temporary, and that the nuisance not only could be abated, but, *had been abated.*" (Emphasis added.) In other words, the jury might have found that the nuisance could be abated but had not, or perhaps it found that the nuisance could be abated and had been abated. In short, in this new case, we have, at best as far as PBM is concerned, an unknown that we must resolve in favor of the Homeowners for the purpose of reviewing the trial court's grant of summary judgment.

Since we must assume there has been a failure to abate, the relevant question becomes whether that failure is significant in light of the holding in *Chrisman.* We think not. In *Chrisman*, it was alleged that the temporary nuisance was also "continuing" and that the creator of the nuisance also "maintained" a nuisance. *Chrisman*, 978 S.W.2d at 540. It is noteworthy that, in *Chrisman*, the nuisance once created in 1988 or before did not result in the damages sued on until a 1992 storm. *Id.* at 537. This can mean nothing other than that the temporary nuisance went unabated after it was created until it did the damage long after being created. In the case now before us, the complaint specifically alleges that the jury finding in the previous case represents a binding determination that PBM is "maintaining a

temporary and continuing nuisance." The complaint specifically alleges that "PBM is liable for creating and maintaining a nuisance."

It seems to us that the Homeowners are arguing, at least implicitly, that the failure to abate means the project was never completed, therefore the statute of repose does not apply. In *Meyer v. Bryson,* 891 S.W.2d 223 (Tenn.Ct.App.1994), a case about uncorrected defects in a house, this Court rejected a similar argument as follows:

> The plaintiffs argue that the house has never been substantially completed because there are still defects in the house that have not been repaired. We cannot accept this argument. To do so would, in essence, defeat the purpose of the statute of [repose] set out in T.C.A. § 28–3–202.

*Id.* at 225. Thus, we reject any contention that the statute cannot apply simply because of a failure to abate.

Since we have been shown nothing in the *facts* of the present case to take it out of the ambit of *Chrisman,* we will consider whether the Homeowners have shown us some reason in the *law* why *Chrisman* does not control the outcome of this case. The Homeowners argue that the "statute of repose does not apply to a temporary and continuing nuisance." This argument obviously ignores the holding of *Chrisman* and is patently wrong.

The Homeowners present several variations of the more interesting proposition that it has long been the law in Tennessee that a person damaged by a recurring temporary nuisance can bring an action based on the recurrence even though the recurrence is outside the express *statute of limitations.* The Homeowners rely on *Pate v. City of Martin,* 614 S.W.2d 46 (Tenn.1981); *Kind v. Johnson City,* 63 Tenn.App. 666, 478 S.W.2d 63

(1970); and *Anderson v. American Limestone Co., Inc.,* 168 S.W.3d 757 (Tenn.Ct. App.2004). The problem with this argument is that it fails to appreciate or acknowledge the difference between a statute of repose and a statute of limitations. The Supreme Court summarized the distinction succinctly in *Calaway v. Schucker,* 193 S.W.3d 509 (Tenn.2005), as follows:

> A statute of limitations normally governs the time within which legal proceedings must be commenced after a cause of action accrues. A statute of repose, on the other hand, limits the time within which an action may be brought and is unrelated to the accrual of any cause of action.

> A further distinction is that statutes of repose are substantive ... and extinguish both the right and the remedy while statutes of limitations are procedural, extinguishing only the remedy. Thus, a statute of repose typically does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action from ever arising.... The injured party literally has *no* cause of action.

*Id.* at 515 (citations and quotations omitted; emphasis in original). Tenn.Code Ann. § 28–3–202 is a statute of repose which is "entirely unrelated to the accrual of any cause of action, since [it] begin[s] to run on the date of substantial completion as opposed to the date of injury or damage." *Watts v. Putnam County,* 525 S.W.2d 488, 491 (Tenn.1975). The dates of injury and discovery do not matter to this statute of repose which establishes a "ceiling" beyond which the cause of action cannot exist from the date of substantial completion. *Id.; see Chrisman,* 978 S.W.2d at 539. Therefore, the traditional three-year statute of limitations for injury to property found at Tenn.Code Ann. § 28–3–105 (2000), cannot extend the existence of a

cause of action outside the ceiling "super-imposed" by Tenn.Code Ann. § 28–3–202. *Watts,* 525 S.W.2d at 491.

The cases the Homeowners rely upon are simply not applicable to the statute of repose. *American Limestone,* 168 S.W.3d at 757, concerns the statute of limitations and not the statute of repose.[4] *Id.* at 761 n. 1. Thus, a recurrence commenced a new opportunity to "recover damages occurring within the limitations period, even though the nuisance [had] existed longer than the limitations period." *Id.* at 761. *American Limestone* relied on *Kind,* 478 S.W.2d at 63, where the defendant "plead both the one year (T.C.A .... 23–1424 [now Tenn.Code Ann. § 28–3–104]) and three year (T.C.A. § 28–305 [now Tenn. Code Ann. § 28–3–105]) statutes of limitation" without any mention of a statute of repose. *Id.* at 64. Thus, the court was concerned with whether a new cause of action had accrued from a new flooding event. *Id.* at 66. *Pate* appears to be no more than a recitation of the general rule that a recurrence of a temporary nuisance results in the accrual of a new cause of action. 614 S.W.2d at 48. *Pate* does not discuss either a statute of limitations or a statute of repose; therefore it cannot be used to overcome the express holding of *Chrisman* that the statute of repose applies to a temporary recurring nuisance. The simple answer to the Homeowners' argument is that no cause of action could accrue from the 2005 flooding because any such cause of action had been extinguished by the statute of repose before it ever existed. Accordingly, we hold that the trial court correctly awarded PBM summary judgment.

IV.

The judgment of the trial court is affirmed. Cost on appeal are taxed to the appellants, George R. Caldwell, Jr., and Angie R. Caldwell. This case is remanded, pursuant to applicable law, for collection of costs assessed below.

---

4. *American Limestone, Pate,* and *Kind* all appear to be against the owner-operators of the various premises. The statute of repose is not a defense to "any person in actual possession or ... control ... of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury." Tenn.Code Ann. § 28–3–205 (2000).